

UNITED STATES COURT OF APPEA
FOR DISTRICT OF COLUMBIA CIRCUIT

JUN 3 0 2005

RECEIVED

United States Court of Appeals
**District of Columbia Circuit**

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

JUN ૩ 0 2005

CLERK

Case No: 05-1227

Case Caption: Mohan Kutty, M.D. et al.

Petitioner

v.

United States Department of Labor,
Administrator, Wage & Hour Division,
Employment Standards Administration

Respondent

ORIGINAL

## PETITION FOR REVIEW OF AN
## AGENCY, BOARD, COMMISSION, OR OFFICER

Notice is hereby given this the __29__ __ day of ___June_____ 20_05_ that petitioner(s)

__Mohan Kutty, M.D. et al._____ hereby petitions the United States Court of Appeals for the District

United States Department of Labor,
Administrator, Wage & Hour Division
of Columbia Circuit for review of the order of the respondent(s) Employment Standards Administration entered

the __31__ day of ___May_____ 20_05_.

Attorney for Petitioner(s)/Pro Se Party,

Yoshiko Robertson CA BN 173689

Attorney for Petitioners

Paparelli & Partners LLP    (949) 955-5555

4 Park Plaza, Suite 200

Irvine, California 92614-8560

Address & Telephone Number

Case Name:              Mohan KUTTY, M.D. et. al. v. Administrator, Wage & Hour
                        Division, Employment Standards Administration,
                        U.S. Department of Labor.

ARB Case No.:           03-022

ALJ Case Nos.:          01-LCA-010 through 01-LCA-025

Document:               Petition for Review before the Court of Appeals

A copy of the above-referenced document was sent to the following persons on June 29, 2005.

Liane M. Jarvis

Dr. Viorel Manole
2416 East Stone Drive
#400E
Kingsport, TN 37660

Robert Divine, Esq.
Alison Tuley Shaw, Esq.
Baker, Donelson, Bearman & Caldwell
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450

Dr. Nazneen Ahmed
142 Mount Pelia
P.O. Box 964
Martin, TN 38237

Dr. Ferdinand Casis
827 Blue Top Road
Apt. #2
Tazewell, TN 37879

Dr. Vlad Radulescu
149 Todd Street
Harrogate, TN 37752

Dr. Srinivasa Chintalapudi
4503 Washington Pike
Knowxville, TN 37917

Dr. Dragos Munteanu
1715 Evening Shade Lane
Knoxville, TN 37919

Dr. Sivalingam Kanagasegar
719 Lester Green Lane
Apartment D
Tazewell, TN 37879

Steven J. Mandel, Esq.
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N2716
Washington, DC 20210

Howard Radzely
Officer of the Solicitor
U.S. Departmetn of Labor
200 Constitution Ave., NW
Room S-2002
Washington, DC 20210

Donna E. Sonner, Esq.
Office of the Associate Regional Solicitor
U.S. Department of Labor/SOL
2002 Richard Jones Road
Suite B-201
Nashville, TN 37215

Alfred Robinson
Acting Administrator
Wage and Hour Division
U.S. Department of Labor/ESA
200 Constitution Avenue, NW
Room S-3502
Washington, DC 20210

Sandra R. Sanders
Assistant District Director
Wage and Hour Division
U.S. Department of Labor/ESA
710 Locust Street, Room 101
Knoxville, TN 37902

Hon. Jon M. Vittone
Chief Administrative LawJudge
Office of Administrative Law Judges
800 K Street, NW, Suite 400
Washington, DC 20001-8002

Hon. Alice M. Craft
Administrative Law Judge
Office of Administrative Law Judges

800 K Street, N.W., Suite 400
Washington, DC 20001-8002



UNITED STATES DEPARTMENT OF LABOR
FOR DISTRICT OF COLUMBIA CIRCUIT

JUN 3 0 2005

RECEIVED

In the Matter of:

Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210



05-1227

**UNITED STATES DEPARTMENT
OF LABOR, ADMINISTRATOR,
WAGE & HOUR DIVISION,
EMPLOYMENT STANDARDS
ADMINISTRATION,**

**ARB CASE NO. 03-022**

**ALJ CASE NOS. 01-LCA-010
through
01-LCA-025**

**PROSECUTING PARTY,**

**DATE:**     MAY **3 1** 2005

ORIGINAL

v.

**MOHAN KUTTY, M.D. d/b/a THE
CENTER FOR INTERNAL MEDICINE
AND PEDIATRICS, INC., ET AL.,**

**RESPONDENTS.**

**BEFORE:     THE ADMINISTRATIVE REVIEW BOARD**

**Appearances:**

*For the Prosecuting Party:*
> Steven J. Mandel, Esq., Paul L. Frieden, Esq., Carol B. Feinberg, Esq., *United States Department of Labor, Washington, D.C.*

*For the Respondents:*
> Ramon Carrion, Esq., John Pukas, Esq., *Ramon Carrion, P.A., Carrion Immigration Law Group, Clearwater, Florida,* and Angelo A. Paparelli, Esq., Liane M. Jarvis, Esq., *Paparelli & Partners LLP, Irvine, California*

*For Certain Alien Doctors:*
> Robert C. Divine, Esq., Alison L. Tuley, Esq., *Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Chattanooga, Tennessee*

Case 3:05-cv-00510   Document 1-2   Filed 11/07/05   Page 5 of 95   PageID #: <pageID>

## FINAL DECISION AND ORDER

The Immigration and Nationality Act (INA or the Act)[1] requires that employers pay a certain, prescribed wage to the nonimmigrant alien workers whom they hire. The Act also prohibits employers from discriminating when the workers engage in certain activities. The Administrator of the United States Department of Labor's Wage and Hour Division contends that Dr. Mohan Kutty and various corporations he owned and operated violated the Act when they did not pay foreign doctors they had hired and later discriminated against them. A Department of Labor (DOL) Administrative Law Judge (ALJ) ruled in favor of the Administrator and the doctors. Kutty and the corporations appealed. We affirm the ALJ's decision.

### BACKGROUND

The INA permits employers to hire nonimmigrant alien workers in specialty occupations in the United States. 8 U.S.C.A. § 1101(a)(15)(H)(i)(b). These workers commonly are referred to as H-1B nonimmigrants. Specialty occupations require specialized knowledge and a degree in the specialty. 8 U.S.C.A. § 1184(i)(1). To employ H-1B nonimmigrants, the employer must first fill out a Labor Condition Application (LCA). 8 U.S.C.A. § 1182(n). The LCA stipulates the wage levels that the employer guarantees for the H-1B nonimmigrants. 8 U.S.C.A. § 1182(n)(1); 20 C.F.R. §§ 655.731, 655.732. The LCA states that the alien will be paid the greater of either the actual wage level the employer paid to all other individuals with similar experience and qualifications for the specific employment in question or the prevailing wage level for the occupational classification in the area of employment. 8 U.S.C.A. § 1182(n)(1)(A)(i)(I)-(II). The employer then obtains certification from the DOL that it has filed the LCA with DOL. After it secures the certified LCA, the employer submits a copy to the Immigration and Naturalization Service (INS) and petitions for an H-1B classification for the nonimmigrants it wishes to hire. Upon INS approval, the United States Department of State issues H-1B visas to the nonimmigrants. 20 C.F.R. § 655.705(b).[2]

Kutty owned health care clinics in Florida and decided to open clinics in rural areas of Tennessee in 1998. Between 1998 and 2000, Kutty opened five clinics in Tennessee and hired 18 medical doctors to run the clinics, 17 of whom were nonimmigrant aliens. The doctors signed employment contracts with Kutty that were contingent upon their obtaining medical licenses to practice in Tennessee. Each of the doctors held J1 visas. J1 visa holders are entitled to enter the United States in order to receive graduate medical education or training, but, after finishing their education or training, must return to their home country for two years before becoming eligible to apply for an immigrant or nonimmigrant visa or for permanent residence. 8 U.S.C.A. § 1182(e). A J1 visa holder may obtain a waiver of the two-year foreign residence

---

[1]    8 U.S.C.A. §§ 1101-1537 (West 1999 & Supp. 2004).

[2]    The INS is now the "U.S. Citizenship and Immigration Services" or "USCIS." *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2194-96 (Nov. 25, 2002).

2

requirement if an interested State agency makes such a request on his or her behalf. To qualify, the alien must show that he or she has an employment agreement to practice primary care or specialty medicine for at least three years in a geographic area that the Secretary of Health and Human Services has designated as a having a shortage of health care professionals. 8 U.S.C.A. § 1184(*l*)(1)(B), (D)(ii). Upon receiving a J1 waiver, the nonimmigrant alien is then eligible to obtain an H-1B visa.

All 17 doctors obtained J1 waivers, and Kutty, as the medical director of the various employing corporations named on the LCAs, signed and filed the LCAs. In addition, Kutty also signed and filed H-1B visa petitions on their behalf. Eventually the doctors received H-1B visas.

Late in 2000, Kutty's clinics experienced financial difficulties, and in January 2001, Kutty began to cut some of the doctors' salaries. Eight of these doctors hired an attorney, Robert C. Divine, who wrote a letter to Kutty on February 14, 2001. Divine demanded payment of the salary amounts that were past due. GX 33. If Kutty did not make such payments, Divine stated that he would pursue other remedies on behalf of the doctors, including notifying the DOL of Kutty's noncompliance with the terms of the doctors' LCAs. Divine also informed Kutty that he was prohibited from discriminating against the doctors for complaining about INA violations.

After receiving Divine's letter, Kutty stopped paying the eight doctors that Divine represented. Consequently, on February 28, 2001, Divine filed a complaint on their behalf with the DOL. Shortly after the Administrator began to investigate this complaint, Kutty fired seven of the ten doctors who Divine represented.

The Administrator determined that, in the case of each of the 17 doctors, Kutty violated the INA by willfully failing to pay the required wage. She also found that Kutty had failed to make available LCAs and other necessary documentation and failed to maintain payroll records. As a result, the Administrator ordered Kutty to pay back wages and assessed civil money penalties. The Administrator also determined that Kutty discriminated against nine of the doctors when he terminated their employment because they engaged in protected conduct. Therefore, she also assessed civil money penalties for these violations. Kutty appealed the Administrator's decision and the cases were assigned to a Department of Labor Administrative Law Judge (ALJ) for hearing. The ALJ consolidated the 17 cases.

The ALJ concluded that Kutty violated the Act when he willfully failed to pay the doctors their required wages. She also concluded that Kutty must reimburse the doctors for the J1 waiver and H-1B visa fees and costs they had paid. With some minor adjustments, the ALJ adopted the Administrator's calculations of the back wages and reimbursements. The ALJ further concluded that Kutty discriminated against nine of the doctors for engaging in protected activity. The ALJ adopted the Administrator's civil money penalty calculations. Furthermore, the ALJ found that the circumstances justified piercing the corporate veil and holding Kutty personally liable for the back wages and the civil money penalties. In addition, the ALJ concluded that Kutty should be debarred

3

from employing aliens. Kutty timely filed a petition for review. *See* 20 C.F.R. § 655.655.

## JURISDICTION AND STANDARD OF REVIEW

The Administrative Review Board (ARB or the Board) has jurisdiction to review an ALJ's decision. 8 U.S.C.A. § 1182(n)(2) and 20 C.F.R. § 655.845. *See also* Secretary's Order No. 1-2002, 67 Fed. Reg. 64,272 (Oct. 17, 2002) (delegating to the ARB the Secretary's authority to review cases arising under, inter alia, the INA).

Under the Administrative Procedure Act, the Board, as the Secretary of Labor's designee, acts with "all the powers [the Secretary] would have in making the initial decision . . . ." 5 U.S.C.A. § 557(B) (West 1996), quoted in *Goldstein v. Ebasco Constructors, Inc.*, 1986-ERA-36, slip op. at 19 (Sec'y Apr. 7, 1992). The Board reviews the ALJ's decision de novo. *Yano Enters., Inc. v. Administrator*, ARB No. 01-050, ALJ No. 2001-LCA-0001, slip op. at 3 (ARB Sept. 26, 2001); *Administrator v. Jackson*, ARB No. 00-068, ALJ No. 1999-LCA-0004, slip op. at 3 (ARB Apr. 30, 2001). *See generally Mattes v. United States Dep't of Agric.*, 721 F.2d 1125, 1128-1130 (7th Cir. 1983) (rejecting argument that higher level administrative official was bound by ALJ's decision); *McCann v. Califano*, 621 F.2d 829, 831 (6th Cir. 1980), and cases cited therein (sustaining rejection of ALJ's decision by higher level administrative review body).

## ISSUES

Six issues are relevant in deciding this appeal.

1. Are the DOL and the INS liable to the doctors because they approved the LCAs and H-1B petitions that Kutty filed for the doctors?

2. Are the doctors entitled to back wages and certain reimbursements? If so, did the ALJ properly calculate those amounts?

3. Did Kutty discriminate against nine doctors for engaging in protected activity?

4. Is Kutty liable for civil money penalties, and, if so, did the ALJ properly calculate the amount?

5. Should Kutty be personally liable for the back wages and civil money penalties?

6. Should Kutty be debarred from employing nonimmigrant aliens for two years?

4

## 1. Government Culpability for Approving LCAs and H-1B Petitions

Kutty contends that the ALJ erred in not finding that the DOL and the INS are liable for the back wages and penalties because they approved defective LCAs and H-1B visa petitions that Kutty filed on behalf of the doctors.

### DOL Culpability

The DOL's Employment and Training Administration (ETA) reviews and approves LCAs unless it finds that the application is "incomplete or obviously inaccurate." 8 U.S.C.A. § 1182(n)(1)(G)(ii); 20 C.F.R. § 655.730(b). Kutty, as the medical director for the various corporations listed as "employer" on the LCAs, signed and filed the LCAs for all the H-1B nonimmigrant doctors.[3] *See also* GX 1 at 171. The LCAs listed various prevailing annual wage rates for the doctors, ranging from $115,357 to $52,291. Kutty also signed individual employment agreements with the H-1B nonimmigrant doctors, who were primarily internists, but also included pediatricians, a cardiologist, a rheumatologist and primary care physicians.[4] *See also* GX 1 at 171. Nevertheless, each employment agreement provided for an annual salary of $80,000.

Kutty contends that because the salary listed in the employment agreements was less than the prevailing wage rates listed on the doctors' LCAs, ETA should not have certified the LCAs because they were "incomplete or obviously inaccurate." But, in fact, only 10 of the 17 H-1B nonimmigrant doctors' employment agreement salaries were less than the prevailing wage rates listed on their corresponding LCAs. Furthermore, an H-1B employer is not required to file employment agreements with DOL but only the LCA form itself, and, as the ALJ found, Kutty did not prove that he submitted the employment

---

[3]    LCAs for the following 17 H-1B nonimmigrant doctors are contained in the record: 1) Dr. Ahmed, GX 11 at 5 and GX 11A at 2; 2) Dr. Casis, GX 12 at 5; 3) Dr. Chicos, GX 13 at 8-9; 4) Dr. Chintalapudi, GX 14 at 5; 5) Dr. Haque, GX 15 at 11 and 40; 6) Dr. Ilie, GX 16 at 9 and 35; 7) Dr. Ionescu, GX 17 at 11 and 35; 8) Dr. Kanagasegar, GX 18 at 5; 9) Dr. Khan, GX 19 at 11; 10) Dr. Manole, GX 20 at 5; 11) Dr. Munteanu, GX 21 at 5; 12) Dr. Qadir, GX 23 at 1-11; 13) Dr. Venkatesh, GX 27 at 38; 14) Dr. Speil, GX 26 at 10-11; 15) Dr. Naseem, GX 22 at 14; 16) Dr. Radulescu, GX 24 at 5-6 and 32; 17) Dr. Rohatgi, GX 25 at 1-11.

[4]    Employment agreements for the following 17 H-1B nonimmigrant doctors are contained in the record: 1) Dr. Ahmed, GX 11 at 8; 2) Dr. Casis, GX 12 at 12; 3) Dr. Chicos, GX 13 at 18-22; 4) Dr. Chintalapudi, GX 14 at 10-16; 5) Dr. Haque, GX 15 at 20-27; 6) Dr. Ilie, GX 16 at 15-22; Respondent's Exhibit (RX) 68; 7) Dr. Ionescu, GX 17 at 17-24; RX 68; 8) Dr. Kanagasegar, GX 18 at 9-17; 9) Dr. Khan, GX 19 at 21 and 29; 10) Dr. Manole, GX 20 at 10-17; 11) Dr. Munteanu, GX 21 at 11-18; 12) Dr. Qadir, GX 23 at 16-21; RX 86; 13) Dr. Venkatesh, GX 27 at 22-26b, 27-28; 14) Dr. Speil, GX 26 at 18-28; 15) Dr. Naseem, GX 22 at 18-25; 16) Dr. Radulescu, GX 24 at 17-23; 17) Dr. Rohatgi, GX 25 at 19-26.

agreements to ETA. D. & O. at 75. And most importantly, in signing the LCAs, Kutty declared under penalty of perjury that the information provided on the forms is "true and correct" and that "I will comply with [DOL] regulations governing this program." *See* 20 C.F.R. § 655.730(c). Specifically, Kutty checked the box indicating that he would pay the higher of the actual wage or the prevailing wage. *See* 8 U.S.C.A. § 1182(n)(1)(A)(i)(I)-(II); 20 C.F.R. §§ 655.730(d)(1)(i)-(ii), 655.731(a).

As both the ALJ and the Administrator point out, the "DOL is not the guarantor of the accuracy, truthfulness or adequacy of a certified" LCA. 20 C.F.R. § 655.740(c); D. & O. at 6. Consequently, we reject Kutty's contention that ETA should not have certified the LCAs because the salaries specified in the employment agreements did not correspond with the prevailing wage rates listed on the LCAs.

Kutty also argues that DOL should not have certified the LCAs because the prevailing wage rate listed on some of the doctors' LCAs was less than the highest prevailing wage rate found on other doctors' LCAs. Kutty's contention echoes Divine's argument of on behalf of ten doctors. Divine argues that because some of the LCAs listed a prevailing annual wage rate of $115,357, all 17 of the H-1B nonimmigrant doctors were entitled to an annual wage rate of $115,357, as that wage rate reflected the actual wage level that Kutty paid other doctors with similar qualifications. *See* D. & O. at 15; Brief of Certain Doctors at 2.

Contrary to this contention, the "actual wage level" under the INA is that "paid by the employer" to similarly qualified individuals "as of the time of filing" the LCA. 8 U.S.C.A. § 1182(n)(1)(A)(i)(I)-(II); D. & O. at 69. Since Kutty had not employed or paid any physicians in Tennessee prior to opening his clinics and filing the LCAs, and since not all 17 of the H-1B nonimmigrant doctors possessed the same qualifications or specialties, all of the doctors were not entitled to the same wage. Thus, we reject the argument that the "actual wage level" became $115,357 for each doctor because some of the LCAs listed a prevailing annual wage rate of $115,357.

## *INS Culpability*

Similarly, Kutty contends that the INS erred in approving the H-1B petitions that he filed on behalf of the doctors. Kutty argues that since the petitions did not clearly indicate his intention to pay the greater of the actual or prevailing wage, they should not have been approved. Kutty Brief at 13. In signing each of the petitions, however, Kutty specifically agreed to the terms of the doctors' LCAs, and the LCAs indicate that the doctors would be paid the higher of the actual or prevailing wage.[5] GX 1 at 171; 8

---

[5]     H-1B petitions for the following 17 H-1B nonimmigrant doctors are contained in the record: 1) Dr. Ahmed, GX 11A at 12; 2) Dr. Casis, GX 12 at 11; 3) Dr. Chicos, GX 13 at 17; 4) Dr. Chintalapudi, GX 14 at 9; 5) Dr. Haque, GX 15 at 18; 6) Dr. Ilie, GX 16 at 14; 7) Dr. Ionescu, GX 17 at 16; 8) Dr. Kanagasegar, GX 18 at 8; 9) Dr. Khan, GX 19 at 18; 10) Dr. Manole, GX 20 at 8; 11) Dr. Munteanu, GX 21 at 10; 12) Dr. Qadir, GX 23 at 15; 13) Dr. Venkatesh, GX 27 at 21; 14) Dr. Speil, GX 26 at 16; 15) Dr. Naseem, GX 22 at 16-17; 16) Dr. Radulescu, GX 24 at 12; 17) Dr. Rohatgi, GX 25 at 17.

Case 3:05-cv-00510  Document 1-2  Filed 11/07/05  Page 10 of 95  PageID #: <pageID>

U.S.C.A. § 1182(n)(1)(A)(i)(I)-(II); 20 C.F.R. §§ 655.730(d)(1)(i)-(ii), 655.731(a). Thus, we reject Kutty's argument.

Kutty also argues that the INS should not have approved the H-1B petitions because they did not contain evidence that the doctors had obtained a state (i.e. Tennessee) medical license as INS regulations require. *See* 8 C.F.R. § 214.2(h)(4)(viii)(A)(1) (2004). In this regard, he points out that each of the doctors had employment agreements that were contingent upon the doctors eventually obtaining Tennessee medical licenses at the time their H-1B petitions were filed. Kutty Brief at 8-9.

But, under its "no benching" provisions, the Act itself, in unambiguous language, requires that an employer pay the required wage even if the H-1B nonimmigrant is in a nonproductive status because of "lack of a permit or license." 8 U.S.C.A. § 1182(n)(2)(C)(vii)(I); 20 C.F.R. § 655.731(c)(6)(ii), (7)(i); *Rajan v. In'l. Bus. Solutions, Ltd.*, ARB No. 03-104, ALJ No. 03-LCA-12, slip op. at 7 (ARB Aug. 31, 2004).[6] Furthermore, as the ALJ noted, Tennessee does not grant a medical license until a nonimmigrant doctor has obtained a valid visa.[7] D. & O. at 75.

Although the INS regulations require that an H-1B petition contain evidence that a physician have a state medical license, the INS approved these petitions. Furthermore, the INS approved them even though Kutty had informed the agency, when filing H-1B petitions on behalf of Drs. Casis, Manole, Naseem and Radulescu, that their applications to obtain Tennessee medical licenses were pending. *See* GX 12 at 30, GX 20 at 18, GX 22 at 46, GX 24 at 30. Therefore, though the medical license provision contained in the INS regulation is contrary to the "no benching" section of the INA, we conclude, like the ALJ, that INS interpreted the Act as permitting the issuance of an H-1B visa before a medical license is obtained. D. & O. at 70, 75; 8 U.S.C.A. § 1182(n)(2)(C)(vii)(I); 20 C.F.R. § 655.731(c)(6)(ii), (7)(i). The INS's interpretation of the Act was reasonable

---

[6]     Contrary to Kutty's assertion, the ALJ did not apply the "no benching" provisions contained in the former regulations implementing the INA. *See* 20 C.F.R. § 655.731(c)(5)(i) (1995). The Administrator had been enjoined from enforcing those regulations. *See National Ass'n of Mfrs. v. United States Dep't of Labor*, 1996 WL 420868 (D.D.C. 1996). The ALJ correctly noted that those provisions were subsequently codified into the statute itself by the amendments contained in the American Competitiveness and Workforce Improvement Act (ACWIA) of 1998, Title IV of the Omnibus Consolidated and Emergency Supplemental Appropriations Act for Fiscal Year 1999 (P.L. 105-277, 112 Stat. 2681 (1998)). *See* 8 U.S.C.A. § 1182(n)(2)(C)(vii)(I); 65 Fed. Reg. at 80169 (2000); D. & O. at 7 n.6.

[7]     Pursuant to Tennessee's relevant statute, persons applying to practice medicine in Tennessee must submit "[e]vidence of being legally entitled to live and work in the United States if not a citizen of the United States." *See* Tenn. Code Ann. § 63-6-207(a)(1)(E), (2)(E) (West 2005). Such evidence may include "current visa status." *See* R. of Tenn. Bd. of Med. Exam'rs, Ch. 0880-2, Gen. R. & Regs. Governing the Practice of Med., R. 0880-2-.04(8), R. 0880-2-.05(4) (Mar. 2005)(Rev'd).

under these circumstances and we must accord it deference. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See also United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (the reviewing court must not reject an agency interpretation simply because the court would have interpreted the statute otherwise); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (the principles of *Chevron* clearly apply to the INA statutory scheme, and judicial deference is particularly appropriate in the immigration context); *Espejo v. INS*, 311 F.3d 976, 978-979 (9th Cir. 2002); *Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000). Thus, we reject Kutty's contention that the INS should not have approved the H-1B petitions because they did not contain evidence that the doctors had obtained Tennessee medical licenses.

To sum up, we find that Kutty voluntarily subjected himself to the requirements of the H-1B program by submitting LCAs and H-1B petitions on behalf of the nonimmigrant alien doctors. Because Kutty secured all the benefits available under the H-1B program, namely, the ability to employ nonimmigrant aliens, he is estopped from subsequently contending that the LCAs and H-1B petitions that he filed should not have been approved. *See Administrator v. Dallas VA Med. Ctr.*, ARB Nos. 01-077, 01-081, ALJ No. 98-LCA-3, slip op. at 4 (ARB Oct. 30, 2003); *Administrator v. Alden Mgmt. Serv., Inc.*, ARB Nos. 00-020, 00-021, ALJ No. 96-ARN-3, slip op. at 3 (ARB Aug. 30, 2002). *See also Johnson v. Georgia Dep't of Human Res.*, 983 F. Supp. 1464, 1470 (N.D. Ga. 1996) (a party advocating two sharply contradictory positions "will not be permitted to 'speak out of both sides of h[is] mouth with equal vigor and credibility before this court.'") (*quoting Reigel v. Kaiser Foundation Health Plan*, 859 F. Supp. 963, 970 (E.D.N.C. 1994). *Cf. New Hampshire v. Maine*, 532 U.S. 742 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (*quoting Davis v. Wakelee*, 156 U.S. 680, 689 (1895).

## 2. Back Wage and Business Expense Calculations

### *The Back Wage Calculations*

The Administrator and the ALJ determined that Kutty failed to pay the required wage rate to the H-1B nonimmigrant doctors. *See* 20 C.F.R. § 655.731(a). GX 30; D. & O. at 75. We agree with this finding because the record supports it. Furthermore, Kutty does not contest this finding but argues only as to the business expense portion of the back wages assessed against him. Kutty Brief at 17. Divine argues that the Administrator (and ALJ) erred as to the amount to which ten of the doctors are entitled.

The Administrator calculated the back wages as being "the difference between the amount that should have been paid and the amount that actually was paid." 20 C.F.R. § 655.810(a), GX 7; 8A-Q; D. & O. at 75-76. In determining the amount that should have been paid, the Administrator used the prevailing wage rate that Kutty listed on the LCAs. On 12 of the LCAs, Kutty indicated that "SESA" (State Employment Security Agency)

was the source for the prevailing wage rate listed. On the remaining LCAs, Kutty indicated the prevailing wage rate had been determined according to the Economic Research Institute survey, which, according to the Administrator, is considered to be another independent authoritative source for prevailing wage rates. Administrator's Brief at 31. If Kutty used the Economic Research Institute rate, the Administrator properly used the average mean wage rate from the range of prevailing wage rates the survey listed. *See* 20 C.F.R. § 655.731(a)(2)(iii); 20 C.F.R. § 655.731(b)(3)(iii)(B)(1); D. & O. at 76. Except in two minor instances, the ALJ accepted the Administrator's calculations of the back wages because the evidence supported those calculations. D. & O. at 76-83.[8]

On behalf of ten of the doctors, Divine contends that the Administrator and the ALJ erred in calculating the amount of back wages. Specifically, Divine argues that the Administrator erred in determining that the end date for the period for which they were owed back wages was either the date that Kutty fired them or the date that they left their jobs. Brief of Certain Alien Doctors at 2.

DOL regulations specify that wage payments "need not be made if there has been a *bona fide* termination of the employment relationship" and that "INS regulations require the employer to notify the INS that the employment relationship has been terminated so that the [H-1B] petition is canceled (8 C.F.R. 214.2(h)(11))." *See* 20 C.F.R. § 655.731(c)(7)(ii). The applicable INS regulation provides that a H-1B petitioner, such as Kutty, shall "immediately" notify the INS if he "no longer employs the beneficiary," *see* 8 C.F.R. § 214.2(h)(11)(i)(A) (2002), and provides for "automatic revocation" of a petition if the employer "goes out of business." 8 C.F.R. § 214.2(h)(11)(ii). At the hearing, the ALJ determined that Kutty's Tennessee clinics did not go out of business until December 2001, months after the ten H-1B nonimmigrant doctors had been fired or left their jobs with Kutty. HT at 2690, 2743. And the record contains no evidence that Kutty ever notified the INS that he had terminated the doctors or that the clinics had gone out of business.

In effect, Divine contends that since there was not a bona fide termination of the ten doctors' employment and since the clinics did not go out of business until December 2001, the doctors are entitled to back wages up to the point when they found new employment with other employers. But since the Administrator is vested with "enforcement discretion" and considers the totality of circumstances "in fashioning remedies appropriate to the violation," 65 Fed. Reg. at 80180 (2000), and since "the Administrator may impose such other administrative remedies as the Administrator determines to be appropriate," "including . . . back wages to workers . . . whose employment has been terminated in violation of these provisions," 20 C.F.R. §

---

[8]     The ALJ adjusted the back wages that the Administrator calculated for Dr. Kanagasegar, GX 8H. She excluded wages for a month when Dr. Kanagasegar was working for another employer since the Administrator had not intended to include wages for that period. D. & O. at 79 n. 34. Similarly, the ALJ adjusted the back wages that the Administrator calculated for Dr. Manole, GX 8J, by excluding wages for the period before Dr. Manole's H-1B was approved. *See* 20 C.F.R. § 655.731(c)(6)(ii); D. & O. at 80-81.

9

655.810(e)(2), we will not disturb the Administrator and ALJ's calculations because they are neither arbitrary nor do they evidence an abuse of discretion.

### *The J1 Waiver and H-1B Visa Expenses*

The Administrator and the ALJ also found that the doctors had paid fees for obtaining their J1 waivers and H-1B visas. Both the Administrator and the ALJ considered these fees to be employer business expenses and, therefore, determined that Kutty must reimburse the doctors for those expenses. GX 7, 8A-Q, 30; D. & O. at 70-72.

Pursuant to 20 C.F.R. § 655.731(c)(1) (1995) and (2001), "[t]he required wage must be paid to the employee, cash in hand, free and clear, when due, *except that* deductions made in accordance with paragraph (c)(9) of this section may reduce the cash wage below the level of the required wage." Subsection (c)(9)(ii), in turn, states that "'[a]uthorized deductions,' for purposes of the employer's satisfaction of the H-1B required wage obligation" "may not recoup a business expense(s) of the employer (including attorney fees and other costs connected to the performance of the H-1B program functions which are required to be performed by the employer, e.g., preparation and filing of LCA and H-1B petition)." 20 C.F.R. § 655.731(c)(9)(ii) (2001). *See also* 20 C.F.R. § 655.731(c)(7) (1995). "Where the employer depresses the employee's wages below the required wage by imposing on the employee any of the employer's business expense(s), the Department will consider the amount to be an unauthorized deduction from wages." 20 C.F.R. § 655.731(c)(12) (2001); *see also* 20 C.F.R. § 655.731(c)(9) (1995).

The comments regarding the INA's relevant implementing regulation at 20 C.F.R. § 655.731(c)(12) state:

> An H-1B employer is prohibited from imposing its business expenses on the H-1B worker - including attorney fees and other expenses associated with the filing of an LCA and H-1B petition - only to the extent that the assessment would reduce the H-1B worker's pay below the required wage, i.e., the higher of the prevailing wage and the actual wage. . . . Where a worker is required to pay an expense, it is in effect a deduction in wages which is prohibited if it has the effect of reducing an employee's pay (after subtracting the amount of the expense) below the required wage (i.e., the higher of the actual wage or the prevailing wage). . . . Any expenses directly related to the filing of the LCA and the H-1B petition are a business expense that may not be paid by the H-1B worker if such payment would reduce his or her wage below the required wage . . . but remain the responsibility of the employer.

65 Fed. Reg. at 80199 (2000).

Kutty contends that he should not be responsible for paying the fees associated with obtaining the H-1B visas because these were fees the doctors paid to attorneys, hired to serve their own interests, in helping them obtain the visas. Thus, the fees cannot be deemed Kutty's business expenses. In this regard, the comments to the INA's relevant implementing regulations state that "[t]he Department also recognizes that there may be situations where an H-1B worker receives legal advice that is personal to the worker" and "if an applicant for a job hired an attorney clearly to serve the employee's interest ... to provide information necessary for the H-1B petition or review its terms on the worker's behalf, ... the fees for such attorney services are not the employer's business expense." 65 Fed. Reg. at 80199-80200.

But, as the ALJ noted, the H-1B employer has the responsibility to submit the H-1B petition, and issue H-1B certifications and H-1B visa approvals. D. & O. at 71. *See also e.g.*, GX 23 at 33 (doctor's attorney has Kutty review, sign and date H-1B petition for Dr. Qadir); GX 17 at 31 (doctor's attorney requests that Kutty pay filing fee for H-1B petitions of Drs. Ionescu and Ilie); GX 11A at 3, 5; GX 27 at 33 (letters from Kutty and his representative requesting American Consul's approval of H-1B petitions for Drs. Ahmed and Venkatesh). Moreover, although attorneys undertook tasks that were clearly in the interest of the doctors, the ALJ found that the Administrator had not assessed fees charged for those tasks against Kutty. D. & O. at 72. Thus, because attorney fees and other costs connected to the preparation and filing of the H-1B petition are specifically considered to be a business expense of the employer, we reject Kutty's contention that he should not be responsible for paying such fees. *See* 20 C.F.R. § 655.731(c)(9)(ii) (2001), cited above. *See also* 20 C.F.R. § 655.731(c)(7) (1995).

Kutty argues that he should not be responsible for paying the J1 waiver fees and costs that the doctors paid because employers do not submit applications for J1 waivers and J1 waivers are the property of the applicant. The ALJ noted that neither the INA nor its implementing regulations and their accompanying comments address whether the costs associated with obtaining a J1 waiver should be considered an employer's business expense. Nevertheless, because a J1 waiver must be obtained before an H-1B visa can be issued, the ALJ found that the Administrator's determination that the J1 fees and costs are employer business expenses was a reasonable interpretation of the Act and the regulations and was within the Administrator's discretion. D. & O. at 72.

As we previously discussed, only upon receiving a J1 waiver is a nonimmigrant alien J1 visa holder eligible to obtain an H-1B visa. 8 U.S.C.A. § 1101(a)(15)(H)(i)(b); 8 U.S.C.A. § 1184(i)(1), (l)(1)(B), (D)(ii). Moreover, if a State health agency makes a request for a J1 waiver on behalf of a J1 visa holder, as was done for the nonimmigrant doctors here, the application process requires a "letter from the facility that wishes to hire physicians" and a "signed contract" with "signatures of [the] physician and head of the facility." *See* Frequently Asked Questions, U.S. State Dep't, http://travel.state.gov/visa/temp/info/info_1294.html#types. The record shows that either Kutty or his representative referred the doctors to a business, HealthIMPACT America, which would assist them in applying for a J1 waiver. *See* GX 1 at 173; HT at 674, 722-723, 922-923, 990, 1104-1105, 1585-1586, 1971-1972, 2214, 2352. Dr. Manole referred

to HealthIMPACT as Kutty's "business partner." *See* HT at 298. Kutty also filed letters and employment agreements with the Tennessee Department of Health in support of the doctors' applications for J1 waivers. *See* GX 19 at 32; GX 49; GX 78 at 6. *See also* GX 11 at 29; HT at 720. Finally, Kutty noted on the H-1B petitions that the doctors had J1 waivers. *See e.g.*, GX 11A at 10. Therefore, we find that Kutty participated in obtaining the necessary J1 waivers for the doctors he sought to hire.

Again, since the Administrator is vested with enforcement discretion in assessing appropriate remedies and may impose remedies she deems appropriate, we hold that the Administrator's determination that the doctors were entitled to reimbursement of the J1 waiver costs was neither arbitrary nor an abuse of the Administrator's discretion. *See* 20 C.F.R. § 655.810(e)(2).

## 3. Discrimination

The Administrator alleged that Kutty discriminated when he discharged seven of the doctors and, by withholding the pay of two others, constructively discharged them. The ALJ concluded that Kutty discriminated both by withholding the pay of eight doctors and by later terminating the employment of seven of them. GX 30; D. & O. at 83-88. Kutty contends that he stopped paying the doctors and then terminated their employment because they were working at a "sub-par level" and that the DOL had advised him to fire the doctors. Kutty Brief at 18-21.

H-1B employers may not discharge or discriminate against an employee because the employee has "disclosed information to the employer, or to any other person, that the employee reasonably believes evidences a violation" of the INA or because the employee cooperates in an investigation concerning the employer's compliance with the requirements of the INA. 8 U.S.C.A. § 1182(n)(2)(C)(iv); 20 C.F.R. § 655.801. This section "essentially codifies current [DOL] regulations concerning whistleblowers." 65 Fed. Reg. 80178 (2000), *quoting* Senator Abraham, 144 Cong. Rec. S12752 (Oct. 21, 1998). The comments accompanying its implementing regulation state that the DOL, "in interpreting and applying this provision, should be guided by the well-developed principles that have arisen under the various whistleblower protection statutes that have been administered by the [DOL] (see 29 CFR part 24)." 65 Fed. Reg. at 80178. *See also* 29 C.F.R. Part 24 (2004).

For the Administrator to prevail on her charge that Kutty discriminated, she must prove by a preponderance of the evidence that the doctors engaged in protected activity, that Kutty knew about this activity, and that he took adverse action against them because of their protected activity. *See e.g., Hasan v. Enercon Servs., Inc.,* ARB No. 04-045, ALJ No. 03-ERA-31, slip op. at 3 (ARB May 18, 2005).

In January 2001, when the clinics were experiencing financial difficulties, Kutty began cutting some of the doctors' salaries. GX 1 at 39-40. In his February 14, 2001 letter to Kutty on behalf of eight doctors, attorney Divine demanded that Kutty pay the

salaries owed. GX 33; D. & O. at 84-86.[9] If Kutty did not make such payments, Divine stated that he would pursue other remedies, including notifying the DOL of Kutty's noncompliance with the terms of the doctors' LCAs. *See* 20 C.F.R. § 655.731. Furthermore, Divine advised Kutty that he was prohibited from discriminating against the doctors for complaining about INA violations.

We find, like the ALJ, that, by this letter, the eight doctors disclosed information to Kutty that they reasonably believed constituted a violation of the Act, namely, failure to pay the required wages. Therefore, they engaged in protected conduct. 8 U.S.C.A. § 1182(n)(2)(C)(iv). Since Kutty received the letter, he knew about this protected activity. *See* HT at 2756.

After receiving Divine's letter, Kutty stopped paying any salary to the eight doctors. Not paying the doctors their salaries constitutes adverse action. Kutty testified that he stopped paying the eight doctors because they were not working 40 hours per week in the clinics as their employment agreements required. HT at 2754-2756; D. & O. at 85-86.

The ALJ found that the record did not support Kutty's reason for not paying the doctors. D. & O. at 72-74. She began by noting that the number of hours that an H-1B nonimmigrant employee works is irrelevant to the INA's wage payment requirements. *See* 20 C.F.R. § 655.731(c)(4)-(5) (2001); 20 C.F.R. § 655.731(c)(3)-(4) (1995). *See also* 65 Fed. Reg. at 80195 (2000) (employer not required to keep hourly wage records for its full-time H-1B employees paid on a salary basis); D. & O. at 73. She rejected Kutty's claim that only work in the clinics counted toward the 40-hour requirement and that any work at local emergency rooms constituted moonlighting and was not clinic work. She found "overwhelming evidence" that Kutty specifically directed the doctors to work in emergency rooms, hospitals, and nursing homes. Moreover, the doctors' employment agreements stated that hospital rounds would count towards their 40 hour work week requirement, and Kutty admitted as much. *See* GX 1 at 235. D. & O. at 73 n. 31. And, in fact, Kutty contracted for his doctors to work at hospitals. *See* GX 10A. Payments for those services were made to the clinics and not the doctors. See GX 13 at 50-58; GX 77; GX 1 at 235; RX 93. D. & O. at 16.

Mr. Hooli was the administrator of Kutty's Tennessee clinics. Kutty stated that he relied on Hooli's opinion that the eight doctors were not working the required 40 hours per week. GX 1 at 223-225. But Hooli testified that he could not say how much time the doctors worked at the clinics. HT at 2705-2707; D. & O. at 13, 73-74. Indeed, two of the affected doctors, Drs. Naseem and Venkatesh, testified that Hooli told them that if ever he was in court on this matter, he would "have to lie for my friend [Kutty]" about how long the doctors worked at the clinic. HT at 1210, 2273-2274; D. & O. at 41, 51, 74. A clinic secretary, Angela Hensley, similarly testified that after she was fired, Hooli offered her job back if she would write a letter stating that the doctors were not

---

[9]     Divine wrote his letter on behalf of Drs. Chicos, Ilie, Ionescu, Khan, Qadir, Venkatesh, Speil, and Naseem. GX 33.

working the required hours in the office, which, she further testified, was not true. HT at 1290-1292; D. & O. at 44, 74.

Moreover, other evidence belies Kutty's reason for not paying the doctors. First, as the ALJ found, Kutty accused the doctors of not working the required 40 hours only after receiving Divine's letter. D. & O. at 74. Second, when Kutty ultimately fired the doctors, he retained Drs. Naseem and Venkatesh, whom he had characterized as the two worst offenders in not working the required hours. *Id.*; *Compare* GX 1 at 220-221 *with* HT 2760.

Therefore, we find that a preponderance of evidence demonstrates that Kutty's proffered reason for not paying the doctors, i.e. that they were not fulfilling the terms of their contract, was a pretext for not paying them.[10] The real reason for not paying them was Devine's letter. *See Schlagel v. Dow Corning Corp.,* ARB No 02-092, ALJ No. 01-CER-1, slip op. at 14 (ARB April 30, 2004)(employee may establish discrimination by proving employer's proffered reasons for adverse action were not the true reasons but a pretext for discrimination). *See also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507-508 (1993). Consequently, we find that the Administrator proved that Kutty violated the Act when he stopped paying eight doctors after receiving Divine's letter.

After Kutty stopped paying any salary to the eight doctors, Divine filed a complaint on their behalf with the DOL on February 28, 2001. GX 28. On March 14, 2001, the Administrator began an investigation and interviewed the doctors. GX 29A-29P; HT at 67-68. Both the complaint and the doctors' interviews constitute protected activity. *See* 8 U.S.C.A. § 1182(n)(2)(C)(iv); 20 C.F.R. § 655.801; 20 C.F.R. § 655.806. On March 19, 2001, the Administrator faxed a letter to Kutty notifying him that an on-site investigation would commence at Kutty's Florida office on March 21, 2001. *See* GX 64, 82; 20 C.F.R. § 655.805. On March 21, 2001, an area representative for the Administrator began an on-site investigation of Kutty's records, and Divine also faxed a letter to Kutty demanding payment of salary amounts owed to two additional doctors. *See* GX 34. Later that same day, Kutty fired seven doctors.[11]

In his pre-hearing brief, Kutty suggested that he had no knowledge that Divine had instigated the investigation on behalf of the doctors, and thus he was not aware of protected conduct. As the ALJ noted, however, a patient of one of the doctors, Annette Fonte, testified that Hooli told her that the doctors had "turned [Kutty] in to the labor board." HT at 2033-2035. Thus, the ALJ inferred that Kutty had knowledge of the doctors' protected activity. D. & O. at 86. We find that Kutty was aware that the doctors had filed a DOL complaint and DOL had begun an investigation. And the record leads us

---

[10] The ALJ reasonably construed a portion of Kutty's testimony to be an admission, thus direct evidence, that he stopped paying the doctors because of Divine's letter. *See* HT at 2754-2756; D. & O. at 85-86. We do not make this finding.

[11] Kutty fired Drs. Chicos, Haque, Ilie, Ionescu, Khan, Qadir and Speil. GX 30.

to reasonably infer that Kutty knew that the doctors had initiated the complaint and investigation.

Kutty proffered two reasons for terminating the doctors' employment. First, that the clinics were having financial problems and therefore he could not pay the doctors. And second, Kutty asserts that when the Administrator's investigator, Sandra Kibler, arrived at his Florida office on March 21 to inspect records, he explained to her that the clinics were in financial trouble and the doctors were not performing as promised. Kutty testified that Kibler then informed him that he was required to either pay the H-1B nonimmigrant doctors their required wage, or, in light of what he had said about the financial problems and the doctors not working, he could terminate their employment. HT at 2759-2760. But Kibler testified that she told Kutty that while he could have previously terminated his H-1B employees if he felt that they were underperforming, it was too late to do so once the Administrator began to investigate because it would "look like retaliation." HT at 2065-2067, 2087; D. & O. at 64-65, 87. The ALJ credited Kibler's testimony that she did not recommend that Kutty fire the doctors, and Kutty has not demonstrated that Kibler's testimony is false. Thus, we find that Kibler did not tell Kutty to fire the doctors.

The Administrator proved by a preponderance of the evidence that Kutty discharged the doctors, at least in part, because of the DOL complaint and the investigation. When Kutty fired the doctors three weeks after they filed the DOL complaint, one week after the investigation into the complaint began, and on the same day that DOL investigators arrived at his Florida office to examine records, his decision to discharge the doctors must be deemed, in the ALJ's words, "inextricably linked to their having complained to Kutty and the DOL about the failure to pay them the salary required by the INA." D. & O. at 88.[12]

---

[12] The ALJ concluded that Kutty could not prevail under a "dual motive" analysis. That is, Kutty did not show that, despite the DOL complaint and the subsequent investigation, he would have fired the doctors because of the clinics' financial woes. D. & O. at 88. We agree with this conclusion because the record supports it. We note, however, that the ALJ apparently applied the "clear and convincing" standard of proof in her dual motive analysis. D. & O. at 84. While we agree that even under the clear and convincing standard, Kutty could not prevail, we note that neither the Act nor the regulations specify the standard of proof to apply in gauging whether an INA employer may avoid liability under a dual motive analysis. The preponderance standard applies to the environmental whistleblower protection statutes listed at Part 24 of 29 C.F.R. *See Cox v. Lockheed Martin Energy Sys., Inc.,* ARB No. 99-040, ALJ No. 97-ERA-17, slip op. at 7 n. 7 (ARB Mar. 30, 2001). On the other hand, under the Energy Reorganization Act, also included in Part 24, the respondent employer's dual motive burden is by clear and convincing evidence. 42 U.S.C.A § 5851(b)(2)(D) (West 2000). Therefore, in the absence of any clear indication in the Act or regulations as to which standard applies, we hold that, under the INA, an employer must demonstrate by a preponderance of evidence that it would have taken the same unfavorable personnel action in the absence of protected activity.

### 4. Civil Money Penalties

The Act provides that the Administrator "may" assess civil money penalties up to $1000 for non-willful violations such as failure to pay wages and up to $5000 for willful violations or for discrimination. 8 U.S.C.A. § 1182(n)(2)(C)(i)-(ii); 20 C.F.R. § 655.810(b)(1)-(2)(i)-(iii). The Administrator assessed Kutty civil money penalties of $4000 per violation for willfully failing to pay required wages, $4000 per violation for discriminating against the doctors, and $800 per violation for failing to make available LCAs and other necessary documentation. GX 30. No penalties were imposed for Kutty's failure to maintain payroll records.

The ALJ found that Kutty admitted that he knew he was not going to pay the doctors the salaries listed on their LCAs. *See e.g.* GX 1 at 210-212 (regarding Dr. Khan's salary). Thus, she concluded, like the Administrator, that Kutty's failure to pay required wages was "willful," which is defined as "a knowing failure or a reckless disregard with respect to whether the conduct was contrary to" the INA. 20 C.F.R. § 655.805(c); D. & O. at 90-91. We find that the Administrator and the ALJ correctly concluded that Kutty's failure to pay wages was willful because the record supports such a conclusion.

The regulations specify seven factors that may be considered in determining the amount of the civil money penalties to be assessed: previous history of violations by the employer, the number of workers affected, the gravity of the violations, the employer's good faith efforts to comply, the employer explanation, the employer's commitment to future compliance, the employer's financial gain due to the violations or potential financial loss, injury or adverse effect to others. 20 C.F.R. § 655.810(c).

The ALJ considered these factors and concluded that the Administrator's assessment of civil money penalties was reasonable. Although Divine asserts that the Administrator's assessment of civil money penalties was conservative, the Administrator is vested with "enforcement discretion" "in fashioning remedies appropriate to the violation." 65 Fed. Reg. at 80180. *See also* 8 US.C.A. § 1182(n)(2)(C)(i)-(ii); 20 C.F.R. § 655.810(b)(1)-(2)(i)-(iii), (e)(2), (f). Consequently, as the Administrator is vested with discretion in calculating the amount of civil money penalties, and the record demonstrates that she did not abuse that discretion, we will not modify the Administrator's assessment or the ALJ's determination.

### 5. Personal Liability for Back Wages and Civil Money Penalties

The Administrator charged Kutty and the various corporate entities listed on the LCAs as employers.[13] Under the Act, the entity named as the employer on the LCA is

---

[13] The named corporate entities are: Sumeru Health Care Group; Sumeru Health Care Group, Inc. (incorporated in Florida, GX 5); Sumeru Health Care Group, Inc. (incorporated

16

liable. *See Administrator v. Native Techs., Inc.,* ARB No. 98-034, ALJ No. 96-LCA-2, slip op. at 7-8 (ARB May 28, 1999). But because all of Kutty's Tennessee clinics had closed, the Administrator "pierced the corporate veil" and held Kutty personally liable for the back wages and the civil money penalties. Kutty contends that he acted in good faith and, therefore, should not be personally liable.

The ALJ applied Tennessee common law in piercing the corporate veil and holding Kutty personally liable.[14] She discussed the factors that Tennessee courts consider relevant in determining whether to pierce the corporate veil. D. & O. at 99-101.[15] Then she found that "[m]ost of those factors are present in the case at hand." First, the Tennessee corporations were "undercapitalized" and Kutty supported them with funds from his Florida businesses and his own personal funds. Second, the record contained no evidence that Kutty issued stock certificates for the corporations. Kutty was the sole owner and had sole control over the corporate entities that submitted LCAs. Third, Kutty made all decisions regarding the corporations, and the administration of the corporate entities was shared in the same, centralized office. Fourth, she found that the assets of the corporations were interchangeable and their dealings were not at arm's length. D. & O. at 101.

Kutty contends that he should not be personally liable because he did not transfer assets from any of the corporate entities to avoid debts or pay himself any salary or commingle corporate funds with his personal funds, but actually transferred personal funds into the corporations to keep them viable. And the mere fact that a corporation has gone out of business is not sufficient grounds, Kutty argues, to pierce the corporate veil. Kutty Brief at 22-23.

---

in Tennessee, GX 2); Sumeru Health Care Group, Inc. (TN); Sumeru Health Care Group, L.C. (of Florida, GX 6) d/b/a Center for Internal Medicine and Pediatrics, Inc.; Sumeru Health Care Group, L.C. d/b/a Center for Internal Medicine and Pediatrics, P.C.; Center for Internal Medicine and Pediatrics, Inc. (incorporated in Tennessee, GX 3); Center for Internal Medicine and Pediatrics, P.C.; Maya Health Care, L.C., or other similar variations. *See* D. & O. at 94-99.

[14]    *Carter-Jones Lumber Co. v. LTV Steel Co.,* 237 F.3d 745, 746 n.1, 750 (6th Cir. 2001) (applied state common law to pierce corporate veil in claim arising under the liability provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C.A. § 9601 *et seq.*(West 1995)). *See also United States v. Bestfoods,* 524 U.S. 51, 55, 63 n.9, 64 (1998) (leaving open the question whether state or federal common law applies to pierce corporate veil in case involving federal statute).

[15]    The ALJ cited *Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc.,* 908 S.W.2d 211 (Tenn. Ct. App. 1995) and *VP Bldgs., Inc. v. Polygon Group, Inc.,* No. M2001-00613-COA-R3-CV, 2002 WL 1564 (Tenn. Ct. App. 2002). *See also Boles v. Nat'l Dev. Co., Inc.,* No. M2003-00971-COA-R3-CV, ___S.W. 3d___, 2005 WL 975358, *14-16 (Tenn. Ct. App. Apr. 26, 2005) citing *VP Bldgs.*

17

Furthermore, Kutty argues that no authority exists under the INA's H-1B provisions or its implementing regulations for imposing personal liability.[16] Kutty also argues that imposing personal liability under the INA's H-1B provisions would frustrate the Act's purpose, which is to facilitate American global economic competitiveness while protecting American workers, and, in effect, would constitute rule-making without providing for notice and comment. Nor, Kutty notes, did he consent to be held personally liable as a consequence of being a voluntary and good faith participant in the H-1B program.

But under the circumstances herein, we reject Kutty's arguments. In light of the fact that the employing corporations are out of business and likely have no assets, a decision not to hold Kutty liable would be grossly unfair to the doctors because Kutty willfully violated the requirements of the Act. Furthermore, as the ALJ found, when Kutty terminated the doctors' employment because they engaged in protected activity, the clinics could not have continued to operate, thus any possibility that the Tennessee corporations might pay the back wages and the civil money penalties was foreclosed. Consequently, because Kutty's corporations had, in the ALJ's words, "no mind, will, or existence of their own" and his "domination" was used to perpetuate violations of the Act, we conclude that, in addition to the corporate respondents, Kutty is personally liable for the back wages and the civil money penalties. D. & O. at 101.

## 6. Debarment

The Act compels the Secretary to notify the Attorney General in the event she finds that an "employer" has willfully violated the Act or discriminated. The Attorney General then must debar the employer from employing H-1B nonimmigrants for two years. 8 U.S.C.A. § 1182(n)(2)(C)(ii).[17] The Act does not define "employer." But the implementing regulations define an "employer" as a "person, firm, corporation, contractor, or other association or organization in the United States which has an

---

[16]      In his response to the Board's Order granting Kutty's Motion for Reconsideration, Kutty references a February 3, 2004 ALJ D. & O., *Administrator, Wage & Hour Div., United States Dep't of Labor v. Abcom Consulting and Training, LLC*, 2004-LCA-0011 (ALJ Feb. 3, 2004), where the ALJ cites a letter from Abcom's attorney to her in which he states that the Office of the Solicitor, U. S. Department of Labor, representing the Administrator, interprets the INA as not allowing for personal liability. The ALJ further noted that the Administrator did not respond though she had the opportunity to do so. From this, Kutty argues that the Administrator acknowledges that the DOL interprets the INA as not allowing personal liability for violations of the INA. However, the Administrator notes in her response to the Board's Order Granting Reconsideration that her decision to not pierce the corporate veil in *Abcom* was one of "prosecutorial discretion" and that it does not reflect any change in her position that Kutty should be held personally liable.

[17]      The Administrator provided notification of the relevant INA violations to the DOL's ETA and the Attorney General in accordance with 8 U.S.C.A. § 1182(N)(2)(C)(ii)(II) and 20 C.F.R. §§ 655.810(d)(2); 655.855(a). GX 30.

18

employment relationship with H-1B nonimmigrants and/or U.S. workers." 20 C.F.R. § 655.715. [18]

Kutty argued to the ALJ that though he signed the LCAs, he did so only as President and Medical Director of the corporation and not in an individual capacity. The ALJ agreed with the Administrator, however, that Kutty was an employer because he met the definition of "employer."

In our environmental whistleblower jurisprudence, which, as we noted, applies to discrimination claims under the INA, we held that the crucial factor in determining whether an employment relationship exists is whether the respondent acted in the capacity of an employer, that is, exercised control over, or interfered with, the terms, conditions, or privileges of the complainant's employment. The ability to hire, transfer, promote, reprimand, or discharge the complainant, or to influence another employer to take such actions against a complainant, is evidence of the requisite degree of control. *Seetharam v. General Elec. Co.*, ARB No. 03-029, ALJ No. 2002-CAA-21, slip op. at 5 (ARB May 28, 2004); *Lewis v. Synagro Techs., Inc.*, ARB No. 02-072, ALJ Nos. 02-CAA-12, 14, slip op. at 8 n. 14, 9-10 (ARB Feb. 27, 2004).

The record demonstrates that Kutty hired, reprimanded, and discharged the doctors. Thus, he exercised control over and interfered with the doctors' employment. Therefore, we conclude that an "employment relationship" existed between Kutty and the doctors and that he was their employer. Consequently, the Attorney General should debar Kutty for two years.

### CONCLUSION

The Administrator proved that Kutty and the corporations violated the Act when they did not pay the 17 doctors the required wages. She also properly concluded that Kutty and the corporations must reimburse those doctors who paid J1 waiver and H-1B visa costs and expenses. Furthermore, the Administrator met her burden of proof that Kutty and the corporations violated the Act when they discriminated against nine doctors. Moreover, the Administrator's assessment of civil money penalties is reasonable. Therefore, we **AFFIRM** the ALJ's Order dated October 9, 2002. Additionally, the circumstances herein compel us to conclude that Kutty is personally liable for the back

---

[18]     Under the previous implementing regulation, to be considered an "employer," the "person" or "corporation" had to have an Internal Revenue Service tax identification number. *See* 20 C.F.R. § 655.715 (1995). The current amended version of the regulation, which became effective on December 20, 2000, does not contain this requirement. *See* 65 Fed. Reg. 80211 (2000). Nevertheless, in his response to the Board's Order granting Dr. Kutty's Motion for Reconsideration, Kutty contends that the IRS tax number requirement was still in effect until November, 23, 2004, and therefore, since no proof was adduced that he had a tax number, he cannot be an "employer." Contrary to Kutty's contention, although Section 655.715 was again amended in part, effective November, 23, 2004, the IRS Service tax identification number requirement had already been removed. *See* 69 Fed. Reg. 68228 (2004).

Case 3:05-cv-00510   Document 1-2   Filed 11/07/05   Page 23 of 95   PageID #: <pageID>

wages, the reimbursements, and the civil money penalties. Finally, we conclude that the Attorney General should debar Kutty for two years.

**SO ORDERED.**

**OLIVER M. TRANSUE**
**Administrative Appeals Judge**

**WAYNE C. BEYER**
**Administrative Appeals Judge**

CASE NAME : *DOL v. Mohan Kutty, M.D. d/b/a The Center for Internal Medicine and Pediatrics, Inc., et al.*

ARB CASE NO: 03-022

ALJ CASE NO. : 2001-LCA-10 through 01-LCA-25

DOCUMENT : Final Decision and Order

A copy of the above-referenced document was sent to the following persons on

MAY 3 1 2005 .

*M. Cynthia Douglas*

**CERTIFIED MAIL:**

Angelo A. Paparelli
Paparelli & Partners LLP
4 Park Plaza, Suite 200
Irvine, CA 92614

Dr. Viorel Manole
2416 East Stone Drive
#400E
Kingsport, TN 37660

Robert Divine, Esq.
Alison Tuley Shaw, Esq.
Baker, Donelson, Bearman & Caldwell
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450

Dr. Nazneen Ahmed
142 Mount Pelia
P.O. Box 964
Martin, TN 38237

Dr. Ferdinand Casis
827 Blue Top Road
Apt. #2
Tazewell, TN 37879

Dr. Vlad Radulescu
149 Todd Street
Harrogate, TN 37752

Dr. Srinivasa Chintalapudi
4503 Washington Pike
Knoxville, TN 37917

Dr. Dragos Munteanu
1715 Evening Shade Lane
Knoxville, TN 37919

Dr. Sivalingam Kanagasegar
719 Lester Green Lane
Apartment D
Tazewell, TN 37879

## **REGULAR MAIL**

Steven J. Mandel, Esq.
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N2716
Washington, DC 20210

Howard Radzely
Office of the Solicitor
U.S. Department of Labor
200 Constitution Ave., NW
Room S-2002
Washington, DC 20210

Donna E. Sonner, Esq.
Office of the Associate Regional Solicitor
U.S. Department of Labor/SOL
2002 Richard Jones Road
Suite B-201
Nashville, TN 37215

Alfred Robinson
Acting Administrator
Wage and Hour Division
U.S. Department of Labor/ESA
200 Constitution Avenue, N.W.
Room S-3502
Washington, DC 20210

Sandra R. Sanders
Assistant District Director
Wage and Hour Division
U.S. Department of Labor/ESA
710 Locust Street, Room 101
Knoxville, TN 37902

Hon. John M. Vittone
Chief Administrative Law Judge
Office of Administrative Law Judges
800 K Street, N.W., Suite 400
Washington, DC 20001-8002

Hon. Alice M. Craft
Administrative Law Judge
Office of Administrative Law Judges
800 K Street, N.W., Suite 400
Washington, DC 20001-8002

 **PAPARELLI & PARTNERS LLP**

LAWYERS ▲ SERVING THE IMMIGRATION NEEDS
OF GLOBAL BUSINESSES AND FAMILIES

ANGELO A. PAPARELLI
YOSHIKO I. ROBERTSON
SUSAN K. WEHRER

4 PARK PLAZA ▲ SUITE 200
IRVINE, CA 92614-8533
TELEPHONE 949/955-5555
FACSIMILE 949/955-5599
WWW.ENTERTHEUSA.COM



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

JUN 3 0 2005

**RECEIVED**

June 29, 2005

**SUBMISSION OF PETITION FOR REVIEW**

Office of the Clerk
United States Court of Appeals
District of Columbia Circuit
333 Constitution Avenue, N.W., Room 5423
Washington, D.C. 20001

**05-1227**

Re:     Mohan KUTTY, M.D. et. al.

v.

U.S. Department of Labor, Administrator, Wage & Hour Division, Employment
Standards Administration

ARB Case No. 03-022 and ALJ Case Nos. 01-LCA-010 through 01-LCA-025

*ORIGINAL*

Dear Court Clerk:

We are attorneys for Dr. Mohan Kutty. This Petition for Review is respectfully

submitted in response to the Final Decision and Order of the United States Department of Labor

Administrative Review Board entered on May 31, 2005. As the Immigration and Nationality Act

does provide which court has jurisdiction over this Petition for Review, we respectfully submit

the Petition to the United States Court of Appeals, District of Columbia Circuit. If the Court of

Appeals lacks jurisdiction to accept this Petition, we respectfully request that the Petition be

transferred to the court of competent jurisdiction. We will be requesting admission to the United

States Court of Appeals, District of Columbia Circuit.

If you require any further information or documentation in connection with this matter,

please contact us at (949) 955-5555. Thank you for your attention to this matter.

Very truly yours,

Yoshiko Robertson, Esq.

# UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

-------------------------------------------

No.     05-1227                              September Term, 2004

Mohan Kutty, Petitioner
v.
United States Department of Labor, Respondent

## O R D E R

        This case was filed and docketed on 6/30/05. The case was filed as a petition for review and was assigned the above number.

        It is **ORDERED** that petitioner(s) shall submit the following document(s) (original and one copy required, unless otherwise noted) by the indicated date(s):

8/12/05 Docketing statement.
8/12/05 Statement of issues to be raised.
8/12/05 Certificate of Counsel (Cir. R. 28(a)(1)).
8/12/05 Statement as to whether or not a deferred appendix under
        F.R.A.P. 30(c) will be utilized. (A motion will not be necessary.)
8/12/05 Original and four copies of procedural motions which would affect
        the calendaring of this case.
8/29/05 Dispositive motions, if any. See Cir. R. 27(g).
        (Original and four copies.)

        It is **FURTHER ORDERED** that respondent(s) shall submit the following document(s) (original and one copy required, unless otherwise noted) by the indicated date(s):

8/29/05 Entry of Appearance form.
8/29/05 Certified Index to Record.
8/12/05 Original and four copies of procedural motions which would affect
        the calendaring of this case.
8/29/05 Dispositive motions, if any. See Cir. R. 27(g).
        (Original and four copies.)

        It is **FURTHER ORDERED** that briefing in this case is deferred pending further order of the Court.

        The Clerk is directed to certify and transmit a copy of this order, along with the petition for review, to respondent(s).

                        FOR THE COURT:
                        Mark J. Langer, Clerk

            BY:         *Lisa M. English*
                        Lisa M. English, Deputy Clerk

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

JUL 1 3 2005

CLERK

**MARK J. LANGER**
**CLERK**

GENERAL INFORMATION
(202) 216-7000

Date:    July 13, 2005

RE:     No. 05-1227

**Mohan Kutty, Petitioner**
**v.**
**United States Department of Labor, Respondent**

Yoshiko Robertson, Esq.
Paparelli & Partners LLP
4 Park Plaza
Suite 200
Irvine, CA  92614

Dear Ms. Robertson:

It is my understanding that you represent a party in the above
captioned case.

Our records reveal that you are not a member of the Bar of this
Court. It is the policy of the Court that all attorneys appearing before
it be members of the Bar of this Court. Our instructions do not allow
us to accept filings from attorneys who are not members. Also, the
names of non-members may not appear on any opinion the Court may issue.
Generally, attorneys must be members of this Court to present oral
argument.

A copy of the application for admission is attached. Unless you advise
me to the contrary, I will expect your completed application
within 30 days of the date of this letter.

                    Very truly yours,

                    Mark J. Langer, Clerk

BY:        *Lisa M. English*

                    Lisa M. English
                    Deputy Clerk

Enclosures

Form 47 (June 1992)

916315

United States Court of Appeals

**District of Columbia Circuit**

**DOCKETING STATEMENT**

*Administrative Agency Review Proceedings*
*(To be completed by appellant/petitioner)*

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

JUL 27 2005

CLERK

1. CASE NO. __05-1227__ 2. DATE DOCKETED __06/30/05__

3. CASE NAME
   (lead parties only) __Mohan Kutty, M.D.__ v. __United States Department of Labor__

4. TYPE OF CASE: [X] Review [ ] Appeal [ ] Enforcement [ ] Complaint [ ] Tax Court

5. IS THIS CASE REQUIRED BY STATUTE TO BE EXPEDITED? YES _____ NO __X__

   If YES, cite statute: _____

6. CASE INFORMATION:

   a. Identify agency whose order is to be reviewed: __U.S. Department of Labor Administrative Review Board__

   b. Give agency docket or order number(s): __ARB 03-022; ALJ No. 01-LCA-01 through 01-LCA-025__

   c. Give date(s) of order(s): __Final Decision and Order May 31, 2005__

   d. Has a request for rehearing or reconsideration been filed at the agency? YES _____ NO __X__
      If so, when was it filed? _____ By whom? _____
      Has the agency acted? YES _____ NO _____ If so, when? _____

   e. Are any other cases involving the same underlying agency order pending in this Court or in any other Court?
      YES __X__ NO _____ If YES, identify case name(s), docket number(s), and court(s): _____
      __Mohan Kutty, M.D. v. U.S. Department of Labor; 6th Circuit; Docket # 05-3863__

   f. Are any other cases, to counsel's knowledge, pending before the agency, this Court, another Circuit Court, or the Supreme
      Court which involve *substantially the same issues* as the instant case presents?
      YES _____ NO __X__ If YES, give case name(s) and number(s) of these cases and identify court/agency:
      _____

   g. Have the parties attempted to resolve the issues in this case through arbitration, mediation, or any other alternative for
      dispute resolution? YES _____ NO __X__ If so, provide the name of the program and the dates of
      participation. _____

Signature _____ Date __July 26, 2005__

Name of Party (Print) __Mohan Kutty, M.D.__

Name of Counsel for Appellant/Petitioner (Print) __Angelo A. Paparelli__ Firm __Paparelli & Partners LLP__

Address __4 Park Plaza, Suite 200__

__Irvine, California 92614-8560__

Phone __(949) 955-5555__ Fax No. __(949) 955-5599__

**ATTACH A CERTIFICATE OF SERVICE**

**Note:** If counsel for any other party believes that the information submitted is inaccurate or incomplete, counsel may so advise the
Clerk within 10 days by letter, with copies to all other parties, specifically referring to the challenged statement. An
original and three copies of such letter should be submitted.



## U.S. COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

In the Matter of:                          )
                                           )
Mohan KUTTY, M.D.,                         )    **Case No. 05-1227**
                                           )
                    Petitioner             )
        v.                                 )
                                           )
United States Department of Labor,         )
                                           )
                    Respondent.            )

**REQUEST TO DEFER FILING OF AN APPENDIX PURSUANT TO F.RA.P. 30(c)**


Respondent, Mohan Kutty, M.D. ("Dr. Kutty" or "Respondent"), by and through

his attorney, Angelo A. Paparelli and Yoshiko Robertson of Paparelli & Partners LLP,

requests the Court to permit the deferred filing of an appendix pursuant to F.R.A.P. 30(c)

and the Court's Order dated July 13, 2005. The July 13, 2005 Order, which is

incorporated herein by reference, does not require the filing of a formal motion pursuant

to F.R.A.P. 30(c).


Respectfully submitted,

On behalf of Respondent,

ANGELO A. PAPARELLI,
Michigan State Bar # 98446
California State Bar # P26892

No.    05-1227                                        September Term, 2004

Mohan Kutty, Petitioner
v.
United States Department of Labor, Respondent

## O R D E R

This case was filed and docketed on 6/30/05. The case was filed as a petition for review and was assigned the above number.

It is **ORDERED** that petitioner(s) shall submit the following document(s) (original and one copy required, unless otherwise noted) by the indicated date(s):

8/12/05 Docketing statement.
8/12/05 Statement of issues to be raised.
8/12/05 Certificate of Counsel (Cir. R. 28(a)(1)).
8/12/05 Statement as to whether or not a deferred appendix under
        R.R.A.P. 30(c) will be utilized. (A motion will not be necessary.)
8/12/05 Original and four copies of procedural motions which would affect
        the calendaring of this case.
8/29/05 Dispositive motions, if any. See Cir. R. 27(g).
        (Original and four copies.)

It is **FURTHER ORDERED** that respondent(s) shall submit the following document(s) (original and one copy required, unless otherwise noted) by the indicated date(s):

8/29/05 Entry of Appearance form.
8/29/05 Certified Index to Record.
8/12/05 Original and four copies of procedural motions which would affect
        the calendaring of this case.
8/29/05 Dispositive motions, if any. See Cir. R. 27(g).
        (Original and four copies.)

It is **FURTHER ORDERED** that briefing in this case is deferred pending further order of the Court.

The Clerk is directed to certify and transmit a copy of this order, along with the petition for review, to respondent(s).

                                  FOR THE COURT:
                                  Mark J. Langer, Clerk

                      BY:      *Lisa M. English*

                               Lisa M. English, Deputy Clerk

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

JUL 1 3 2005

## U.S. COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

In the Matter of:                          )
                                           )
Mohan KUTTY, M.D.,                         )          **Case No. 05-1227**
                                           )
            Petitioner                     )
     v.                                    )
                                           )
United States Department of Labor,         )
                                           )
            Respondent.                    )

## STATEMENT OF ISSUES

1.     Respondent, Mohan Kutty, M.D. ("Dr. Kutty" or "Respondent"), by and through

his attorneys, Angelo A. Paparelli and Yoshiko Robertson of Paparelli & Partners LLP,

appeals the May 31, 2005, Final Decision and Order of the U.S. Department of Labor

("DOL") Administrative Review Board ("ARB"). Respondent will file a brief in

support of his appeal.

2.     On the May 31, 2005, the ARB affirmed the October 9, 2002 Decision of the

DOL Administrative Law Judge ("ALJ"), in which the ALJ found that Dr. Kutty had

failed to comply with the Immigration and Nationality Act of 1952, as amended ("INA"),

8 U.S.C.A. §§1101(a)(15)(H)(i)(b), 1182(n), and 1184(c), and its implementing

regulations, 20 C.F.R. §§ 655, subparts H and I, by willfully failing to pay the alien

doctors employed by the Center for Internal Medicine and Pediatrics, Inc., et. al

("medical clinics"). and for discriminating against nine doctors for engaging in protected

activity. The ARB upheld the ALJ's Decision, ordering Dr. Kutty and the medical clinics

to pay back wages to the doctors, reimburse the doctors for the filing fees and attorney

fees associated with obtaining J-1 waivers and H-1B visas, and pay civil money penalties

to the DOL. The ARB further pierced the corporate veil and, thereby, found Dr. Kutty personally liable for the back wages, reimbursements, and civil money penalties and that Dr. Kutty should be debarred from employing nonimmigrant aliens for two years.

## RELIEF SOUGHT

3.      Respondent seeks reversal of the Administrative Review Board's May 31, 2005 Final Decision and Order, including the underlying October 9, 2002 Order of the Administrative Law Judge. Specifically, Dr. Kutty seeks an Order absolving him of personal liability for back wages and reimbursements to the alien doctors and civil money penalties to the DOL. Respondent further seeks a removal of the two-year debarment from employing nonimmigrant aliens. Respondent further seeks attorney fees and costs associated with litigation from the U.S. Department of Labor pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 et seq..

## RELIEF GRANTED

4.      No relief has been granted to Respondent.

## ISSUES PRPOSED TO BE RAISED ON APPEAL

5.      Respondent challenges the legal and factual determinations of the ARB and seeks review of the following issues addressed by the ARB:

a.      Do the actions of the DOL and the U.S. Citizenship and Immigration Services ("USCIS") in approving the Labor Condition Applications ("LCA") and the H-1B petitions mitigate Respondent's liability and are the DOL and USCIS liable to the alien doctors for civil money penalties?

The ARB held that the DOL and USCIS are not liable to the alien doctors for

approving the LCAs and the H-1B petitions that were filed for the alien doctors. Respondent argues that the issuance of the LCAs by DOL and the issuance of the H-1B visas by USCIS to the alien doctors were erroneous actions which should excuse or diminish Respondent's liability and should result in the imposition of civil money penalties on the DOL and USCIS. Specifically, the DOL failed to investigate the obvious inconsistencies contained in the LCAs: the salaries certified in the LCAs differed from the salaries contained in the alien doctors' employment agreements; the salaries in the alien doctors' employment agreements were below the prevailing wage; and, some of the certified LCAs reflected salaries less than the prevailing wage. Furthermore, the USCIS should not have granted H-1B status to the alien doctors because the alien doctors had not satisfied all of the contingencies for employment, such as licenses to practice medicine in the state of Tennessee, at the time of the submission of their H-1B visa petitions and because their H-1B visa petitions did not include a clear indication of the employers' intent to pay either the prevailing or actual wage.

  b. Are the alien doctors entitled to reimbursements for the filing fees and attorney fees associated with obtaining J-1 waivers and H-1B visas, and, if so, did the ALJ properly calculate those amounts?

  The ARB determined that, in addition to back wages, the alien doctors are entitled to reimbursements for the filing fees and attorney fees associated with obtaining J-1 waivers and H-1B visas because such fees are business expenses of the employer. The INA's implementing regulations, 20 C.F.R. §655.731(c), prohibit an H-1B employer from imposing its business expenses on an employee if the assessment reduces the H-1B worker's pay below the higher of the prevailing wage and actual wage. As the ARB

noted, the INA and its implementing regulations are silent on the issue of whether fees associated with obtaining J-1 waivers may be classified as an employer's business expenses. Respondent argues that the alien doctors are not entitled to such reimbursements because such fees were paid by the doctors to their personal attorneys, hired to serve their interests, in helping them to obtain visas.

    c.    Did Respondent discriminate against nine doctors for engaging in protected activity?

The ARB found, by stopping payments to two doctors and by discharging seven doctors, Respondent had discriminated against the nine doctors for engaging in the protected activity of disclosing information to the employer or a third party about possible INA violations. Respondent argues that a preponderance of the evidence indicates that the same personnel actions would have been taken in the absence of protected activity. Specifically, adverse personnel actions were taken, including stopping payments to two doctors and terminating seven doctors because of reasons independent of the protected activity: the doctors failed to generate income for the medical clinics; the doctors were not working the hours as required by their employment agreements; the medical clinics were experiencing financial difficulties; and, after the DOL was informed of the clinics' financial difficulties, the DOL through the Administrator's investigator advised that the doctors must either be paid full salaries or be terminated.

    d.    Did the administrative tribunals below lack authority under the INA and its implementing regulations and the facts of record to pierce the corporate veil and, thereby, hold Respondent personally liable for the back wages and civil money penalties?

4

Referring to Tennessee common law, the ARB held that Respondent should be held personally liable for the back wages and civil money penalties. Even if Tennessee common law were appropriate, Respondent argues that the facts indicate that he made a good faith attempt to operate the clinics as separate corporate entities and, thus, the imposition of personal liability is unwarranted. Respondent further argues that the INA and its implementing regulations provide no express or implied authority to pierce the corporate veil and to hold an individual officer or shareholder of a corporate employer personally liable for corporate violations of the H-1B program. The imposition of such personal liability for LCA violations would frustrate Congress' dual intent in enacting the H-1B visa program to facilitate American competitiveness and to protect U.S. workers. By imposing such personal liability, the DOL is engaging in rule-making without providing for the notice-and-comment requirements of the American Procedures Act, 5 U.S.C. § 551 et. seq.. Moreover, the corporate veil must not be pierced as Respondent is not an employer for H-1B LCA purposes and he did not consent to be held individually responsible for any H-1B LCA obligations of the corporate employer.

e. Should Respondent be debarred from employing nonimmigrant aliens for two years?

Drawing on the environmental whistleblower jurisprudence, the ARB determined that an employment relationship existed between Respondent as an individual and the alien doctors and, thus, Respondent should be personally debarred from employing nonimmigrant aliens for two years. Respondent argues that, as an individual, he is not an employer under the INA and its implementing regulations and that the facts indicate that he signed the LCAs as a corporate officer and not in an individual capacity.

The ARB made clearly erroneous factual and legal determinations which meet the standard for appellate review. This case requires consideration by the U.S. Court of Appeals, District of Columbia Circuit.

Respectfully submitted,

On behalf of Respondent,

ANGELO A. PAPARELLI,
Michigan State Bar # 98446
California State Bar # P26892



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

JUL 2 7 2005

RECEIVED

UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

CERTIFICATE OF SERVICE

Case Name:        Mohan Kutty, M.D.,

Petitioner

v.

United States Department of Labor,

Respondent.

Case No.:         05-1227

Documents:        Docketing Statement
                  Statement of Issues to Be Raised
                  Request to Defer Filing of an Appendix Pursuant to F.R.A.P. 30(c)

Copies of the above-referenced documents were sent to the following persons on July 26, 2005

Debi Gloria

Dr. Viorel Manole
2416 East Stone Drive
#400E
Kingsport, TN 37660

Robert Divine, Esq.
Alison Tuley Shaw, Esq.
Baker, Donelson, Bearman & Caldwell
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450

Dr. Nazneen Ahmed
142 Mount Pelia
P.O. Box 964
Martin, TN 38237

Dr. Ferdinand Casis
827 Blue Top Road
Apt. #2
Tazewell, TN 37879

Dr. Vlad Radulescu
149 Todd Street
Harrogate, TN 37752

Dr. Srinivasa Chintalapudi
4503 Washington Pike
Knowxville, TN 37917

Dr. Dragos Munteanu
1715 Evening Shade Lane
Knoxville, TN 37919

Dr. Sivalingam Kanagasegar
719 Lester Green Lane
Apartment D
Tazewell, TN 37879

Steven J. Mandel, Esq.
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N2716
Washington, DC 20210

Howard Radzely
Officer of the Solicitor
U.S. Departmetn of Labor
200 Constitution Ave., NW
Room S-2002
Washington, DC 20210

Donna E. Sonner, Esq.
Office of the Associate Regional Solicitor
U.S. Department of Labor/SOL
2002 Richard Jones Road
Suite B-201
Nashville, TN 37215

Alfred Robinson
Acting Administrator
Wage and Hour Division
U.S. Department of Labor/ESA
200 Constitution Avenue, NW
Room S-3502
Washington, DC 20210

Sandra R. Sanders
Assistant District Director
Wage and Hour Division
U.S. Department of Labor/ESA
710 Locust Street, Room 101
Knoxville, TN 37902

Hon. Jon M. Vittone

Chief Administrative LawJudge
Office of Administrative Law Judges
800 K Street, NW, Suite 400
Washington, DC 20001-8002

Hon. Alice M. Craft
Administrative Law Judge
Office of Administrative Law Judges
800 K Street, N.W., Suite 400
Washington, DC 20001-8002

**UNITED STATES COURT OF APPEALS**
DISTRICT OF COLUMBIA CIRCUIT
-------------------------------------------

No.    05-1227                                    September Term, 2004

Mohan Kutty, Petitioner
v.
United States Department of Labor, Respondent

## O R D E R

This case was filed and docketed on 6/30/05. The case was filed as a
petition for review and was assigned the above number.

It is **ORDERED** that petitioner(s) shall submit the following
document(s) (original and one copy required, unless otherwise noted) by the
indicated date(s):

8/12/05 Docketing statement.
8/12/05 Statement of issues to be raised.
8/12/05 Certificate of Counsel (Cir. R. 28(a)(1)).
8/12/05 Statement as to whether or not a deferred appendix under
        F.R.A.P. 30(c) will be utilized. (A motion will not be necessary.)
8/12/05 Original and four copies of procedural motions which would affect
        the calendaring of this case.
8/29/05 Dispositive motions, if any. See Cir. R. 27(g).
        (Original and four copies.)

It is **FURTHER ORDERED** that respondent(s) shall submit the
following document(s) (original and one copy required, unless otherwise noted)
by the indicated date(s):

8/29/05 Entry of Appearance form.
8/29/05 Certified Index to Record.
8/12/05 Original and four copies of procedural motions which would affect
        the calendaring of this case.
8/29/05 Dispositive motions, if any. See Cir. R. 27(g).
        (Original and four copies.)

It is **FURTHER ORDERED** that briefing in this case is deferred
pending further order of the Court.

The Clerk is directed to certify and transmit a copy of this order,
along with the petition for review, to respondent(s).

                              FOR THE COURT:
                              Mark J. Langer, Clerk

BY:            *Lisa M. English*
               Lisa M. English, Deputy Clerk

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

JUL 1 3 2005

CLERK



# PAPARELLI
# & PARTNERS LLP

LAWYERS ▲ SERVING THE IMMIGRATION NEEDS
OF GLOBAL BUSINESSES AND FAMILIES

ANGELO A. PAPARELLI
UNITED STATES COURT OF APPEALS YOSHIKO I. ROBERTSON
FOR DISTRICT OF COLUMBIA CIRCUIT SUSAN K. WEHRER

4 PARK PLAZA ▲ SUITE 200
IRVINE, CA 92614-8533
TELEPHONE 949/955-5555
FACSIMILE 949/955-5599
WWW.ENTERTHEUSA.COM

JUL 2 7 2005

RECEIVED

July 26, 2005

THIS SUBMISSION CONTAINS CONFIDENTIAL
COMMERCIAL INFORMATION PER FOIA [5 USC
552(b)(4)]. SUBMITTER REQUESTS PREDISCLOSURE
NOTIFICATION PER 06/23/87 PRESIDENTIAL
EXECUTIVE ORDER.

**By Federal Express**
Shana Thurman
Court Clerk
United States Court of Appeals
District of Columbia Circuit
333 Constitution Avenue, N.W., Room 5423
Washington, D.C. 20001

> Re: Mohan Kutty, M.D.
> v.
> U.S. Department of Labor, Wage & Hour Division, Employment
> Standards Administration
>
> Case No. 05-1227
>
> Docketing Statement; Request to Defer Filing of An Appendix Pursuant
> to F.R.A.P. 30(c); and, Statement of Issues

Dear Ms. Thurman:

We are attorneys for Dr. Mohan Kutty and we filed a Petition for Review on his

behalf on June 30, 2005. Per the July 13, 2005 Order, we are submitting the following

documents with proof of service:

- Docketing Statement;
- Request to Defer Filing of An Appendix Pursuant to F.R.A.P. 30(c); and,
- Statement of Issues.

If you require any further information or documentation in connection with this

matter, please contact me at (949) 955-5555. Thank you for your attention to this matter.

Very truly yours,

Angelo A. Paparelli , Esq.

Case 3:05-cv-00510   Document 1-2   Filed 11/07/05   Page 44 of 95   PageID #: <pageID>



ORIGINAL

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

AUG - 5 2005

RECEIVED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 05-1227

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

AUG - 5 2005

CLERK

MOHAN KUTTY,                                                    Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR,                             Respondent.

RESPONDENT'S MOTION TO DISMISS PETITION FOR REVIEW[1]

Respondent Department of Labor respectfully moves to dismiss the Petition for

Review. This Court lacks direct review jurisdiction over decisions of the Administrative

Review Board. Petitioner has cited no basis on which this Court would have original

jurisdiction to review that type of claim, and respondent is aware of none.

Consequently, the petition for review should be dismissed.

I.

Without citation to a statute that confers original jurisdiction on courts of appeals

to review denials of relief from the Administrative Review Board (ARB) resolving

claims of the Wage and Hour Board Administrator, Mohan Kutty filed this petition

seeking judicial review of the Final Decision and Order of the ARB. The ARB affirmed

an Administrative Law Judge's conclusion that petitioner failed to pay the salaries and

expenses related to petitioner's employment of alien doctors in health clinics that he

---

[1] Respondent requests that the time for filing a "certified index to record" be extended until
after this motion is acted on. The Department of Labor will not be obliged to create the certified
index if, as expected, the motion is granted and the petition is dismissed.

owned in Florida and Tennessee, in violation of the Immigration and Nationality Act, 8 U.S.C. 1101, et seq.

The petitioner seeks judicial review of that decision in this Court. We understand that petitioner has also filed a virtually identical petition for review in the United States Court of Appeals for the Sixth Circuit.

II.

The petition should be dismissed. Petitioner cites no statute that confers direct review jurisdiction on this Court to review decisions of the ARB. And respondent is aware of none. Consequently, in the absence of jurisdiction the petition for review should be dismissed.

It is a commonplace that federal courts are courts of limited jurisdiction and lack jurisdiction unless Congress has by statute clearly assigned jurisdiction to that particular court. As the Supreme Court explained as long ago as 1845, only Congress can confer jurisdiction on the federal courts:

[T]he judicial power of the United States. . . is . . .dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress, who possess the sole power of creating the tribunals . . . for the exercise of the judicial power, and of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.

- 2 -

*Carey v. Curtis,* 44 U.S. (3 How.) 236, 245 (1845).[2] The Supreme Court has expressed it as a presumption against federal jurisdiction--unless the party advancing jurisdiction meets her burden of establishing that jurisdiction, in fact, exists. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U. S. 375, 377 (1994)(citations omitted). Because petitioner has failed to identify any statute that gives this Court jurisdiction, and respondent is aware of none, the petition for review should be dismissed.

III.

WHEREFORE, respondent respectfully requests that the petition for review be dismissed.

Kenneth L. Wainstein MR

KENNETH L. WAINSTEIN
United States Attorney

R. CRAIG LAWRENCE
Assistant United States Attorney

---

[2] Indeed, until 1875 Congress provided no general federal question jurisdiction. *See Palmore v. United States,* 411 U.S. 389, 401 (1973).

- 3 -

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing respondent's motion to dismiss

petition for review, has been made on counsel for petitioner as follows:

YOSHIKO ROBERTSON, ESQ
4 PARK PLAZA
SUITE 200
IRVINE, CA 92614-8533

This __5th__ day of August, 2005.

R. CRAIG LAWRENCE
Assistant United States Attorney
Judiciary Center Building
555 4th Street N.W.
Washington, D.C. 20530
(202) 514-7151

**U.S. Department of Labor**      Administrative Review Board
200 Constitution Avenue, N.W.
Washington, D.C. 20210



In the Matter of:

UNITED STATES DEPARTMENT          ARB CASE NO. 03-022
OF LABOR, ADMINISTRATOR,
WAGE & HOUR DIVISION,
EMPLOYMENT STANDARDS              ALJ CASE NOS. 01-LCA-010
ADMINISTRATION,                                through
                                          01-LCA-025

PROSECUTING PARTY,                DATE:   MAY 3 1 2005

v.

MOHAN KUTTY, M.D. d/b/a THE
CENTER FOR INTERNAL MEDICINE
AND PEDIATRICS, INC., ET AL.,

RESPONDENTS.

**BEFORE:**      THE ADMINISTRATIVE REVIEW BOARD

**Appearances:**

*For the Prosecuting Party:*
Steven J. Mandel, Esq., Paul L. Frieden, Esq., Carol B. Feinberg, Esq., *United States Department of Labor, Washington, D.C.*

*For the Respondents:*
Ramon Carrion, Esq., John Pukas, Esq., *Ramon Carrion, P.A., Carrion Immigration Law Group, Clearwater, Florida,* and Angelo A. Paparelli, Esq., Liane M. Jarvis, Esq., *Paparelli & Partners LLP, Irvine, California*

*For Certain Alien Doctors:*
Robert C. Divine, Esq., Alison L. Tuley, Esq., *Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Chattanooga, Tennessee*

## FINAL DECISION AND ORDER

The Immigration and Nationality Act (INA or the Act)[1] requires that employers pay a certain, prescribed wage to the nonimmigrant alien workers whom they hire. The Act also prohibits employers from discriminating when the workers engage in certain activities. The Administrator of the United States Department of Labor's Wage and Hour Division contends that Dr. Mohan Kutty and various corporations he owned and operated violated the Act when they did not pay foreign doctors they had hired and later discriminated against them. A Department of Labor (DOL) Administrative Law Judge (ALJ) ruled in favor of the Administrator and the doctors. Kutty and the corporations appealed. We affirm the ALJ's decision.

### BACKGROUND

The INA permits employers to hire nonimmigrant alien workers in specialty occupations in the United States. 8 U.S.C.A. § 1101(a)(15)(H)(i)(b). These workers commonly are referred to as H-1B nonimmigrants. Specialty occupations require specialized knowledge and a degree in the specialty. 8 U.S.C.A. § 1184(i)(1). To employ H-1B nonimmigrants, the employer must first fill out a Labor Condition Application (LCA). 8 U.S.C.A. § 1182(n). The LCA stipulates the wage levels that the employer guarantees for the H-1B nonimmigrants. 8 U.S.C.A. § 1182(n)(1); 20 C.F.R. §§ 655.731, 655.732. The LCA states that the alien will be paid the greater of either the actual wage level the employer paid to all other individuals with similar experience and qualifications for the specific employment in question or the prevailing wage level for the occupational classification in the area of employment. 8 U.S.C.A. § 1182(n)(1)(A)(i)(I)-(II). The employer then obtains certification from the DOL that it has filed the LCA with DOL. After it secures the certified LCA, the employer submits a copy to the Immigration and Naturalization Service (INS) and petitions for an H-1B classification for the nonimmigrants it wishes to hire. Upon INS approval, the United States Department of State issues H-1B visas to the nonimmigrants. 20 C.F.R. § 655.705(b).[2]

Kutty owned health care clinics in Florida and decided to open clinics in rural areas of Tennessee in 1998. Between 1998 and 2000, Kutty opened five clinics in Tennessee and hired 18 medical doctors to run the clinics, 17 of whom were nonimmigrant aliens. The doctors signed employment contracts with Kutty that were contingent upon their obtaining medical licenses to practice in Tennessee. Each of the doctors held J1 visas. J1 visa holders are entitled to enter the United States in order to receive graduate medical education or training, but, after finishing their education or training, must return to their home country for two years before becoming eligible to apply for an immigrant or nonimmigrant visa or for permanent residence. 8 U.S.C.A. § 1182(e). A J1 visa holder may obtain a waiver of the two-year foreign residence

---

[1]     8 U.S.C.A. §§ 1101-1537 (West 1999 & Supp. 2004).

[2]     The INS is now the "U.S. Citizenship and Immigration Services" or "USCIS." *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2194-96 (Nov. 25, 2002).

requirement if an interested State agency makes such a request on his or her behalf. To qualify, the alien must show that he or she has an employment agreement to practice primary care or specialty medicine for at least three years in a geographic area that the Secretary of Health and Human Services has designated as a having a shortage of health care professionals. 8 U.S.C.A. § 1184(*l*)(1)(B), (D)(ii). Upon receiving a J1 waiver, the nonimmigrant alien is then eligible to obtain an H-1B visa.

All 17 doctors obtained J1 waivers, and Kutty, as the medical director of the various employing corporations named on the LCAs, signed and filed the LCAs. In addition, Kutty also signed and filed H-1B visa petitions on their behalf. Eventually the doctors received H-1B visas.

Late in 2000, Kutty's clinics experienced financial difficulties, and in January 2001, Kutty began to cut some of the doctors' salaries. Eight of these doctors hired an attorney, Robert C. Divine, who wrote a letter to Kutty on February 14, 2001. Divine demanded payment of the salary amounts that were past due. GX 33. If Kutty did not make such payments, Divine stated that he would pursue other remedies on behalf of the doctors, including notifying the DOL of Kutty's noncompliance with the terms of the doctors' LCAs. Divine also informed Kutty that he was prohibited from discriminating against the doctors for complaining about INA violations.

After receiving Divine's letter, Kutty stopped paying the eight doctors that Divine represented. Consequently, on February 28, 2001, Divine filed a complaint on their behalf with the DOL. Shortly after the Administrator began to investigate this complaint, Kutty fired seven of the ten doctors who Divine represented.

The Administrator determined that, in the case of each of the 17 doctors, Kutty violated the INA by willfully failing to pay the required wage. She also found that Kutty had failed to make available LCAs and other necessary documentation and failed to maintain payroll records. As a result, the Administrator ordered Kutty to pay back wages and assessed civil money penalties. The Administrator also determined that Kutty discriminated against nine of the doctors when he terminated their employment because they engaged in protected conduct. Therefore, she also assessed civil money penalties for these violations. Kutty appealed the Administrator's decision and the cases were assigned to a Department of Labor Administrative Law Judge (ALJ) for hearing. The ALJ consolidated the 17 cases.

The ALJ concluded that Kutty violated the Act when he willfully failed to pay the doctors their required wages. She also concluded that Kutty must reimburse the doctors for the J1 waiver and H-1B visa fees and costs they had paid. With some minor adjustments, the ALJ adopted the Administrator's calculations of the back wages and reimbursements. The ALJ further concluded that Kutty discriminated against nine of the doctors for engaging in protected activity. The ALJ adopted the Administrator's civil money penalty calculations. Furthermore, the ALJ found that the circumstances justified piercing the corporate veil and holding Kutty personally liable for the back wages and the civil money penalties. In addition, the ALJ concluded that Kutty should be debarred

3

from employing aliens. Kutty timely filed a petition for review. *See* 20 C.F.R. § 655.655.

## JURISDICTION AND STANDARD OF REVIEW

The Administrative Review Board (ARB or the Board) has jurisdiction to review an ALJ's decision. 8 U.S.C.A. § 1182(n)(2) and 20 C.F.R. § 655.845. *See also* Secretary's Order No. 1-2002, 67 Fed. Reg. 64,272 (Oct. 17, 2002) (delegating to the ARB the Secretary's authority to review cases arising under, inter alia, the INA).

Under the Administrative Procedure Act, the Board, as the Secretary of Labor's designee, acts with "all the powers [the Secretary] would have in making the initial decision . . . ." 5 U.S.C.A. § 557(B) (West 1996), quoted in *Goldstein v. Ebasco Constructors, Inc.*, 1986-ERA-36, slip op. at 19 (Sec'y Apr. 7, 1992). The Board reviews the ALJ's decision de novo. *Yano Enters., Inc. v. Administrator*, ARB No. 01-050, ALJ No. 2001-LCA-0001, slip op. at 3 (ARB Sept. 26, 2001); *Administrator v. Jackson*, ARB No. 00-068, ALJ No. 1999-LCA-0004, slip op. at 3 (ARB Apr. 30, 2001). *See generally Mattes v. United States Dep't of Agric.*, 721 F.2d 1125, 1128-1130 (7th Cir. 1983) (rejecting argument that higher level administrative official was bound by ALJ's decision); *McCann v. Califano*, 621 F.2d 829, 831 (6th Cir. 1980), and cases cited therein (sustaining rejection of ALJ's decision by higher level administrative review body).

## ISSUES

Six issues are relevant in deciding this appeal.

1. Are the DOL and the INS liable to the doctors because they approved the LCAs and H-1B petitions that Kutty filed for the doctors?

2. Are the doctors entitled to back wages and certain reimbursements? If so, did the ALJ properly calculate those amounts?

3. Did Kutty discriminate against nine doctors for engaging in protected activity?

4. Is Kutty liable for civil money penalties, and, if so, did the ALJ properly calculate the amount?

5. Should Kutty be personally liable for the back wages and civil money penalties?

6. Should Kutty be debarred from employing nonimmigrant aliens for two years?

4

## DISCUSSION

### 1. Government Culpability for Approving LCAs and H-1B Petitions

Kutty contends that the ALJ erred in not finding that the DOL and the INS are liable for the back wages and penalties because they approved defective LCAs and H-1B visa petitions that Kutty filed on behalf of the doctors.

### *DOL Culpability*

The DOL's Employment and Training Administration (ETA) reviews and approves LCAs unless it finds that the application is "incomplete or obviously inaccurate." 8 U.S.C.A. § 1182(n)(1)(G)(ii); 20 C.F.R. § 655.730(b). Kutty, as the medical director for the various corporations listed as "employer" on the LCAs, signed and filed the LCAs for all the H-1B nonimmigrant doctors.[3] *See also* GX 1 at 171. The LCAs listed various prevailing annual wage rates for the doctors, ranging from $115,357 to $52,291. Kutty also signed individual employment agreements with the H-1B nonimmigrant doctors, who were primarily internists, but also included pediatricians, a cardiologist, a rheumatologist and primary care physicians.[4] *See also* GX 1 at 171. Nevertheless, each employment agreement provided for an annual salary of $80,000.

Kutty contends that because the salary listed in the employment agreements was less than the prevailing wage rates listed on the doctors' LCAs, ETA should not have certified the LCAs because they were "incomplete or obviously inaccurate." But, in fact, only 10 of the 17 H-1B nonimmigrant doctors' employment agreement salaries were less than the prevailing wage rates listed on their corresponding LCAs. Furthermore, an H-1B employer is not required to file employment agreements with DOL but only the LCA form itself, and, as the ALJ found, Kutty did not prove that he submitted the employment

---

[3]    LCAs for the following 17 H-1B nonimmigrant doctors are contained in the record: 1) Dr. Ahmed, GX 11 at 5 and GX 11A at 2; 2) Dr. Casis, GX 12 at 5; 3) Dr. Chicos, GX 13 at 8-9; 4) Dr. Chintalapudi, GX 14 at 5; 5) Dr. Haque, GX 15 at 11 and 40; 6) Dr. Ilie, GX 16 at 9 and 35; 7) Dr. Ionescu, GX 17 at 11 and 35; 8) Dr. Kanagasegar, GX 18 at 5; 9) Dr. Khan, GX 19 at 11; 10) Dr. Manole, GX 20 at 5; 11) Dr. Munteanu, GX 21 at 5; 12) Dr. Qadir, GX 23 at 1-11; 13) Dr. Venkatesh, GX 27 at 38; 14) Dr. Speil, GX 26 at 10-11; 15) Dr. Naseem, GX 22 at 14; 16) Dr. Radulescu, GX 24 at 5-6 and 32; 17) Dr. Rohatgi, GX 25 at 1-11.

[4]    Employment agreements for the following 17 H-1B nonimmigrant doctors are contained in the record: 1) Dr. Ahmed, GX 11 at 8; 2) Dr. Casis, GX 12 at 12; 3) Dr. Chicos, GX 13 at 18-22; 4) Dr. Chintalapudi, GX 14 at 10-16; 5) Dr. Haque, GX 15 at 20-27; 6) Dr. Ilie, GX 16 at 15-22; Respondent's Exhibit (RX) 68; 7) Dr. Ionescu, GX 17 at 17-24; RX 68; 8) Dr. Kanagasegar, GX 18 at 9-17; 9) Dr. Khan, GX 19 at 21 and 29; 10) Dr. Manole, GX 20 at 10-17; 11) Dr. Munteanu, GX 21 at 11-18; 12) Dr. Qadir, GX 23 at 16-21; RX 86; 13) Dr. Venkatesh, GX 27 at 22-26b, 27-28; 14) Dr. Speil, GX 26 at 18-28; 15) Dr. Naseem, GX 22 at 18-25; 16) Dr. Radulescu, GX 24 at 17-23; 17) Dr. Rohatgi, GX 25 at 19-26.

agreements to ETA. D. & O. at 75. And most importantly, in signing the LCAs, Kutty declared under penalty of perjury that the information provided on the forms is "true and correct" and that "I will comply with [DOL] regulations governing this program." *See* 20 C.F.R. § 655.730(c). Specifically, Kutty checked the box indicating that he would pay the higher of the actual wage or the prevailing wage. *See* 8 U.S.C.A. § 1182(n)(1)(A)(i)(I)-(II); 20 C.F.R. §§ 655.730(d)(1)(i)-(ii), 655.731(a).

As both the ALJ and the Administrator point out, the "DOL is not the guarantor of the accuracy, truthfulness or adequacy of a certified" LCA. 20 C.F.R. § 655.740(c); D. & O. at 6. Consequently, we reject Kutty's contention that ETA should not have certified the LCAs because the salaries specified in the employment agreements did not correspond with the prevailing wage rates listed on the LCAs.

Kutty also argues that DOL should not have certified the LCAs because the prevailing wage rate listed on some of the doctors' LCAs was less than the highest prevailing wage rate found on other doctors' LCAs. Kutty's contention echoes Divine's argument of on behalf of ten doctors. Divine argues that because some of the LCAs listed a prevailing annual wage rate of $115,357, all 17 of the H-1B nonimmigrant doctors were entitled to an annual wage rate of $115,357, as that wage rate reflected the actual wage level that Kutty paid other doctors with similar qualifications. *See* D. & O. at 15; Brief of Certain Doctors at 2.

Contrary to this contention, the "actual wage level" under the INA is that "paid by the employer" to similarly qualified individuals "as of the time of filing" the LCA. 8 U.S.C.A. § 1182(n)(1)(A)(i)(I)-(II); D. & O. at 69. Since Kutty had not employed or paid any physicians in Tennessee prior to opening his clinics and filing the LCAs, and since not all 17 of the H-1B nonimmigrant doctors possessed the same qualifications or specialties, all of the doctors were not entitled to the same wage. Thus, we reject the argument that the "actual wage level" became $115,357 for each doctor because some of the LCAs listed a prevailing annual wage rate of $115,357.

*INS Culpability*

Similarly, Kutty contends that the INS erred in approving the H-1B petitions that he filed on behalf of the doctors. Kutty argues that since the petitions did not clearly indicate his intention to pay the greater of the actual or prevailing wage, they should not have been approved. Kutty Brief at 13. In signing each of the petitions, however, Kutty specifically agreed to the terms of the doctors' LCAs, and the LCAs indicate that the doctors would be paid the higher of the actual or prevailing wage.[5] GX 1 at 171; 8

---

[5]   H-1B petitions for the following 17 H-1B nonimmigrant doctors are contained in the record: 1) Dr. Ahmed, GX 11A at 12; 2) Dr. Casis, GX 12 at 11; 3) Dr. Chicos, GX 13 at 17; 4) Dr. Chintalapudi, GX 14 at 9; 5) Dr. Haque, GX 15 at 18; 6) Dr. Ilie, GX 16 at 14; 7) Dr. Ionescu, GX 17 at 16; 8) Dr. Kanagasegar, GX 18 at 8; 9) Dr. Khan, GX 19 at 18; 10) Dr. Manole, GX 20 at 8; 11) Dr. Munteanu, GX 21 at 10; 12) Dr. Qadir, GX 23 at 15; 13) Dr. Venkatesh, GX 27 at 21; 14) Dr. Speil, GX 26 at 16; 15) Dr. Naseem, GX 22 at 16-17; 16) Dr. Radulescu, GX 24 at 12; 17) Dr. Rohatgi, GX 25 at 17.

6

U.S.C.A. § 1182(n)(1)(A)(i)(I)-(II); 20 C.F.R. §§ 655.730(d)(1)(i)-(ii), 655.731(a). Thus, we reject Kutty's argument.

Kutty also argues that the INS should not have approved the H-1B petitions because they did not contain evidence that the doctors had obtained a state (i.e. Tennessee) medical license as INS regulations require. See 8 C.F.R. § 214.2(h)(4)(viii)(A)(1) (2004). In this regard, he points out that each of the doctors had employment agreements that were contingent upon the doctors eventually obtaining Tennessee medical licenses at the time their H-1B petitions were filed. Kutty Brief at 8-9.

But, under its "no benching" provisions, the Act itself, in unambiguous language, requires that an employer pay the required wage even if the H-1B nonimmigrant is in a nonproductive status because of "lack of a permit or license." 8 U.S.C.A. § 1182(n)(2)(C)(vii)(I); 20 C.F.R. § 655.731(c)(6)(ii), (7)(i); *Rajan v. In'l. Bus. Solutions, Ltd.*, ARB No. 03-104, ALJ No. 03-LCA-12, slip op. at 7 (ARB Aug. 31, 2004).[6] Furthermore, as the ALJ noted, Tennessee does not grant a medical license until a nonimmigrant doctor has obtained a valid visa.[7] D. & O. at 75.

Although the INS regulations require that an H-1B petition contain evidence that a physician have a state medical license, the INS approved these petitions. Furthermore, the INS approved them even though Kutty had informed the agency, when filing H-1B petitions on behalf of Drs. Casis, Manole, Naseem and Radulescu, that their applications to obtain Tennessee medical licenses were pending. See GX 12 at 30, GX 20 at 18, GX 22 at 46, GX 24 at 30. Therefore, though the medical license provision contained in the INS regulation is contrary to the "no benching" section of the INA, we conclude, like the ALJ, that INS interpreted the Act as permitting the issuance of an H-1B visa before a medical license is obtained. D. & O. at 70, 75; 8 U.S.C.A. § 1182(n)(2)(C)(vii)(I); 20 C.F.R. § 655.731(c)(6)(ii), (7)(i). The INS's interpretation of the Act was reasonable

---

[6]    Contrary to Kutty's assertion, the ALJ did not apply the "no benching" provisions contained in the former regulations implementing the INA. See 20 C.F.R. § 655.731(c)(5)(i) (1995). The Administrator had been enjoined from enforcing those regulations. See *National Ass'n of Mfrs. v. United States Dep't of Labor*, 1996 WL 420868 (D.D.C. 1996). The ALJ correctly noted that those provisions were subsequently codified into the statute itself by the amendments contained in the American Competitiveness and Workforce Improvement Act (ACWIA) of 1998, Title IV of the Omnibus Consolidated and Emergency Supplemental Appropriations Act for Fiscal Year 1999 (P.L. 105-277, 112 Stat. 2681 (1998)). See 8 U.S.C.A. § 1182(h)(2)(C)(vii)(I); 65 Fed. Reg. at 80169 (2000); D. & O. at 7 n.6.

[7]    Pursuant to Tennessee's relevant statute, persons applying to practice medicine in Tennessee must submit "[e]vidence of being legally entitled to live and work in the United States if not a citizen of the United States." See Tenn. Code Ann. § 63-6-207(a)(1)(E), (2)(E) (West 2005). Such evidence may include "current visa status." See R. of Tenn. Bd. of Med. Exam'rs, Ch. 0880-2, Gen. R. & Regs. Governing the Practice of Med., R. 0880-2-.04(8), R. 0880-2-.05(4) (Mar. 2005)(Rev'd).

7

under these circumstances and we must accord it deference. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See also United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (the reviewing court must not reject an agency interpretation simply because the court would have interpreted the statute otherwise); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (the principles of *Chevron* clearly apply to the INA statutory scheme, and judicial deference is particularly appropriate in the immigration context); *Espejo v. INS*, 311 F.3d 976, 978-979 (9th Cir. 2002); *Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000). Thus, we reject Kutty's contention that the INS should not have approved the H-1B petitions because they did not contain evidence that the doctors had obtained Tennessee medical licenses.

To sum up, we find that Kutty voluntarily subjected himself to the requirements of the H-1B program by submitting LCAs and H-1B petitions on behalf of the nonimmigrant alien doctors. Because Kutty secured all the benefits available under the H-1B program, namely, the ability to employ nonimmigrant aliens, he is estopped from subsequently contending that the LCAs and H-1B petitions that he filed should not have been approved. *See Administrator v. Dallas VA Med. Ctr.*, ARB Nos. 01-077, 01-081, ALJ No. 98-LCA-3, slip op. at 4 (ARB Oct. 30, 2003); *Administrator v. Alden Mgmt. Serv., Inc.*, ARB Nos. 00-020, 00-021, ALJ No. 96-ARN-3, slip op. at 3 (ARB Aug. 30, 2002). *See also Johnson v. Georgia Dep't of Human Res.*, 983 F. Supp. 1464, 1470 (N.D. Ga. 1996) (a party advocating two sharply contradictory positions "will not be permitted to 'speak out of both sides of h[is] mouth with equal vigor and credibility before this court.'") (*quoting Reigel v. Kaiser Foundation Health Plan*, 859 F. Supp. 963, 970 (E.D.N.C. 1994). *Cf. New Hampshire v. Maine*, 532 U.S. 742 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") (*quoting Davis v. Wakelee*, 156 U.S. 680, 689 (1895).

## 2. Back Wage and Business Expense Calculations

### *The Back Wage Calculations*

The Administrator and the ALJ determined that Kutty failed to pay the required wage rate to the H-1B nonimmigrant doctors. *See* 20 C.F.R. § 655.731(a). GX 30; D. & O. at 75. We agree with this finding because the record supports it. Furthermore, Kutty does not contest this finding but argues only as to the business expense portion of the back wages assessed against him. Kutty Brief at 17. Divine argues that the Administrator (and ALJ) erred as to the amount to which ten of the doctors are entitled.

The Administrator calculated the back wages as being "the difference between the amount that should have been paid and the amount that actually was paid." 20 C.F.R. § 655.810(a), GX 7; 8A-Q; D. & O. at 75-76. In determining the amount that should have been paid, the Administrator used the prevailing wage rate that Kutty listed on the LCAs. On 12 of the LCAs, Kutty indicated that "SESA" (State Employment Security Agency)

8

was the source for the prevailing wage rate listed. On the remaining LCAs, Kutty indicated the prevailing wage rate had been determined according to the Economic Research Institute survey, which, according to the Administrator, is considered to be another independent authoritative source for prevailing wage rates. Administrator's Brief at 31. If Kutty used the Economic Research Institute rate, the Administrator properly used the average mean wage rate from the range of prevailing wage rates the survey listed. *See* 20 C.F.R. § 655.731(a)(2)(iii); 20 C.F.R. § 655.731(b)(3)(iii)(B)(1); D. & O. at 76. Except in two minor instances, the ALJ accepted the Administrator's calculations of the back wages because the evidence supported those calculations. D. & O. at 76-83.[8]

On behalf of ten of the doctors, Divine contends that the Administrator and the ALJ erred in calculating the amount of back wages. Specifically, Divine argues that the Administrator erred in determining that the end date for the period for which they were owed back wages was either the date that Kutty fired them or the date that they left their jobs. Brief of Certain Alien Doctors at 2.

DOL regulations specify that wage payments "need not be made if there has been a *bona fide* termination of the employment relationship" and that "INS regulations require the employer to notify the INS that the employment relationship has been terminated so that the [H-1B] petition is canceled (8 C.F.R. 214.2(h)(11))." *See* 20 C.F.R. § 655.731(c)(7)(ii). The applicable INS regulation provides that a H-1B petitioner, such as Kutty, shall "immediately" notify the INS if he "no longer employs the beneficiary," *see* 8 C.F.R. § 214.2(h)(11)(i)(A) (2002), and provides for "automatic revocation" of a petition if the employer "goes out of business." 8 C.F.R. § 214.2(h)(11)(ii). At the hearing, the ALJ determined that Kutty's Tennessee clinics did not go out of business until December 2001, months after the ten H-1B nonimmigrant doctors had been fired or left their jobs with Kutty. HT at 2690, 2743. And the record contains no evidence that Kutty ever notified the INS that he had terminated the doctors or that the clinics had gone out of business.

In effect, Divine contends that since there was not a bona fide termination of the ten doctors' employment and since the clinics did not go out of business until December 2001, the doctors are entitled to back wages up to the point when they found new employment with other employers. But since the Administrator is vested with "enforcement discretion" and considers the totality of circumstances "in fashioning remedies appropriate to the violation," 65 Fed. Reg. at 80180 (2000), and since "the Administrator may impose such other administrative remedies as the Administrator determines to be appropriate," "including . . . back wages to workers . . . whose employment has been terminated in violation of these provisions," 20 C.F.R. §

---

[8]     The ALJ adjusted the back wages that the Administrator calculated for Dr. Kanagasegar, GX 8H. She excluded wages for a month when Dr. Kanagasegar was working for another employer since the Administrator had not intended to include wages for that period. D. & O. at 79 n. 34. Similarly, the ALJ adjusted the back wages that the Administrator calculated for Dr. Manole, GX 8J, by excluding wages for the period before Dr. Manole's H-1B was approved. *See* 20 C.F.R. § 655.731(c)(6)(ii); D. & O. at 80-81.

655.810(e)(2), we will not disturb the Administrator and ALJ's calculations because they are neither arbitrary nor do they evidence an abuse of discretion.

### The J1 Waiver and H-1B Visa Expenses

The Administrator and the ALJ also found that the doctors had paid fees for obtaining their J1 waivers and H-1B visas. Both the Administrator and the ALJ considered these fees to be employer business expenses and, therefore, determined that Kutty must reimburse the doctors for those expenses. GX 7, 8A-Q, 30; D. & O. at 70-72.

Pursuant to 20 C.F.R. § 655.731(c)(1) (1995) and (2001), "[t]he required wage must be paid to the employee, cash in hand, free and clear, when due, *except that* deductions made in accordance with paragraph (c)(9) of this section may reduce the cash wage below the level of the required wage." Subsection (c)(9)(ii), in turn, states that "'[a]uthorized deductions,' for purposes of the employer's satisfaction of the H-1B required wage obligation" "may not recoup a business expense(s) of the employer (including attorney fees and other costs connected to the performance of the H-1B program functions which are required to be performed by the employer, e.g., preparation and filing of LCA and H-1B petition)." 20 C.F.R. § 655.731(c)(9)(ii) (2001). *See also* 20 C.F.R. § 655.731(c)(7) (1995). "Where the employer depresses the employee's wages below the required wage by imposing on the employee any of the employer's business expense(s), the Department will consider the amount to be an unauthorized deduction from wages." 20 C.F.R. § 655.731(c)(12) (2001); *see also* 20 C.F.R. § 655.731(c)(9) (1995).

The comments regarding the INA's relevant implementing regulation at 20 C.F.R. § 655.731(c)(12) state:

> An H-1B employer is prohibited from imposing its business expenses on the H-1B worker - including attorney fees and other expenses associated with the filing of an LCA and H-1B petition - only to the extent that the assessment would reduce the H-1B worker's pay below the required wage, i.e., the higher of the prevailing wage and the actual wage. . . . Where a worker is required to pay an expense, it is in effect a deduction in wages which is prohibited if it has the effect of reducing an employee's pay (after subtracting the amount of the expense) below the required wage (i.e., the higher of the actual wage or the prevailing wage). . . . Any expenses directly related to the filing of the LCA and the H-1B petition are a business expense that may not be paid by the H-1B worker if such payment would reduce his or her wage below the required wage . . . but remain the responsibility of the employer.

65 Fed. Reg. at 80199 (2000).

Kutty contends that he should not be responsible for paying the fees associated with obtaining the H-1B visas because these were fees the doctors paid to attorneys, hired to serve their own interests, in helping them obtain the visas. Thus, the fees cannot be deemed Kutty's business expenses. In this regard, the comments to the INA's relevant implementing regulations state that "[t]he Department also recognizes that there may be situations where an H-1B worker receives legal advice that is personal to the worker" and "if an applicant for a job hired an attorney clearly to serve the employee's interest ... to provide information necessary for the H-1B petition or review its terms on the worker's behalf, ... the fees for such attorney services are not the employer's business expense." 65 Fed. Reg. at 80199-80200.

But, as the ALJ noted, the H-1B employer has the responsibility to submit the H-1B petition, and issue H-1B certifications and H-1B visa approvals. D. & O. at 71. *See also e.g.*, GX 23 at 33 (doctor's attorney has Kutty review, sign and date H-1B petition for Dr. Qadir); GX 17 at 31 (doctor's attorney requests that Kutty pay filing fee for H-1B petitions of Drs. Ionescu and Ilie); GX 11A at 3, 5; GX 27 at 33 (letters from Kutty and his representative requesting American Consul's approval of H-1B petitions for Drs. Ahmed and Venkatesh). Moreover, although attorneys undertook tasks that were clearly in the interest of the doctors, the ALJ found that the Administrator had not assessed fees charged for those tasks against Kutty. D. & O. at 72. Thus, because attorney fees and other costs connected to the preparation and filing of the H-1B petition are specifically considered to be a business expense of the employer, we reject Kutty's contention that he should not be responsible for paying such fees. *See* 20 C.F.R. § 655.731(c)(9)(ii) (2001), cited above. *See also* 20 C.F.R. § 655.731(c)(7) (1995).

Kutty argues that he should not be responsible for paying the J1 waiver fees and costs that the doctors paid because employers do not submit applications for J1 waivers and J1 waivers are the property of the applicant. The ALJ noted that neither the INA nor its implementing regulations and their accompanying comments address whether the costs associated with obtaining a J1 waiver should be considered an employer's business expense. Nevertheless, because a J1 waiver must be obtained before an H-1B visa can be issued, the ALJ found that the Administrator's determination that the J1 fees and costs are employer business expenses was a reasonable interpretation of the Act and the regulations and was within the Administrator's discretion. D. & O. at 72.

As we previously discussed, only upon receiving a J1 waiver is a nonimmigrant alien J1 visa holder eligible to obtain an H-1B visa. 8 U.S.C.A. § 1101(a)(15)(H)(i)(b); 8 U.S.C.A. § 1184(i)(1), (l)(1)(B), (D)(ii). Moreover, if a State health agency makes a request for a J1 waiver on behalf of a J1 visa holder, as was done for the nonimmigrant doctors here, the application process requires a "letter from the facility that wishes to hire physicians" and a "signed contract" with "signatures of [the] physician and head of the facility." *See* Frequently Asked Questions, U.S. State Dep't, http://travel.state.gov/visa/temp/info/info_1294.html#types. The record shows that either Kutty or his representative referred the doctors to a business, HealthIMPACT America, which would assist them in applying for a J1 waiver. *See* GX 1 at 173; HT at 674, 722-723, 922-923, 990, 1104-1105, 1585-1586, 1971-1972, 2214, 2352. Dr. Manole referred

to HealthIMPACT as Kutty's "business partner." *See* HT at 298. Kutty also filed letters and employment agreements with the Tennessee Department of Health in support of the doctors' applications for J1 waivers. *See* GX 19 at 32; GX 49; GX 78 at 6. *See also* GX 11 at 29; HT at 720. Finally, Kutty noted on the H-1B petitions that the doctors had J1 waivers. *See e.g.*, GX 11A at 10. Therefore, we find that Kutty participated in obtaining the necessary J1 waivers for the doctors he sought to hire.

Again, since the Administrator is vested with enforcement discretion in assessing appropriate remedies and may impose remedies she deems appropriate, we hold that the Administrator's determination that the doctors were entitled to reimbursement of the J1 waiver costs was neither arbitrary nor an abuse of the Administrator's discretion. *See* 20 C.F.R. § 655.810(e)(2).

### 3. Discrimination

The Administrator alleged that Kutty discriminated when he discharged seven of the doctors and, by withholding the pay of two others, constructively discharged them. The ALJ concluded that Kutty discriminated both by withholding the pay of eight doctors and by later terminating the employment of seven of them. GX 30; D. & O. at 83-88. Kutty contends that he stopped paying the doctors and then terminated their employment because they were working at a "sub-par level" and that the DOL had advised him to fire the doctors. Kutty Brief at 18-21.

H-1B employers may not discharge or discriminate against an employee because the employee has "disclosed information to the employer, or to any other person, that the employee reasonably believes evidences a violation" of the INA or because the employee cooperates in an investigation concerning the employer's compliance with the requirements of the INA. 8 U.S.C.A. § 1182(n)(2)(C)(iv); 20 C.F.R. § 655.801. This section "essentially codifies current [DOL] regulations concerning whistleblowers." 65 Fed. Reg. 80178 (2000), *quoting* Senator Abraham, 144 Cong. Rec. S12752 (Oct. 21, 1998). The comments accompanying its implementing regulation state that the DOL, "in interpreting and applying this provision, should be guided by the well-developed principles that have arisen under the various whistleblower protection statutes that have been administered by the [DOL] (see 29 CFR part 24)." 65 Fed. Reg. at 80178. *See also* 29 C.F.R. Part 24 (2004).

For the Administrator to prevail on her charge that Kutty discriminated, she must prove by a preponderance of the evidence that the doctors engaged in protected activity, that Kutty knew about this activity, and that he took adverse action against them because of their protected activity. *See e.g.*, *Hasan v. Enercon Servs., Inc.*, ARB No. 04-045, ALJ No. 03-ERA-31, slip op. at 3 (ARB May 18, 2005).

In January 2001, when the clinics were experiencing financial difficulties, Kutty began cutting some of the doctors' salaries. GX 1 at 39-40. In his February 14, 2001 letter to Kutty on behalf of eight doctors, attorney Divine demanded that Kutty pay the

salaries owed. GX 33; D. & O. at 84-86.[9] If Kutty did not make such payments, Divine stated that he would pursue other remedies, including notifying the DOL of Kutty's noncompliance with the terms of the doctors' LCAs. *See* 20 C.F.R. § 655.731. Furthermore, Divine advised Kutty that he was prohibited from discriminating against the doctors for complaining about INA violations.

We find, like the ALJ, that, by this letter, the eight doctors disclosed information to Kutty that they reasonably believed constituted a violation of the Act, namely, failure to pay the required wages. Therefore, they engaged in protected conduct. 8 U.S.C.A. § 1182(n)(2)(C)(iv). Since Kutty received the letter, he knew about this protected activity. *See* HT at 2756.

After receiving Divine's letter, Kutty stopped paying any salary to the eight doctors. Not paying the doctors their salaries constitutes adverse action. Kutty testified that he stopped paying the eight doctors because they were not working 40 hours per week in the clinics as their employment agreements required. HT at 2754-2756; D. & O. at 85-86.

The ALJ found that the record did not support Kutty's reason for not paying the doctors. D. & O. at 72-74. She began by noting that the number of hours that an H-1B nonimmigrant employee works is irrelevant to the INA's wage payment requirements. *See* 20 C.F.R. § 655.731(c)(4)-(5) (2001); 20 C.F.R. § 655.731(c)(3)-(4) (1995). *See also* 65 Fed. Reg. at 80195 (2000) (employer not required to keep hourly wage records for its full-time H-1B employees paid on a salary basis); D. & O. at 73. She rejected Kutty's claim that only work in the clinics counted toward the 40-hour requirement and that any work at local emergency rooms constituted moonlighting and was not clinic work. She found "overwhelming evidence" that Kutty specifically directed the doctors to work in emergency rooms, hospitals, and nursing homes. Moreover, the doctors' employment agreements stated that hospital rounds would count towards their 40 hour work week requirement, and Kutty admitted as much. *See* GX 1 at 235. D. & O. at 73 n. 31. And, in fact, Kutty contracted for his doctors to work at hospitals. *See* GX 10A. Payments for those services were made to the clinics and not the doctors. *See* GX 13 at 50-58; GX 77; GX 1 at 235; RX 93. D. & O. at 16.

Mr. Hooli was the administrator of Kutty's Tennessee clinics. Kutty stated that he relied on Hooli's opinion that the eight doctors were not working the required 40 hours per week. GX 1 at 223-225. But Hooli testified that he could not say how much time the doctors worked at the clinics. HT at 2705-2707; D. & O. at 13, 73-74. Indeed, two of the affected doctors, Drs. Naseem and Venkatesh, testified that Hooli told them that if ever he was in court on this matter, he would "have to lie for my friend [Kutty]" about how long the doctors worked at the clinic. HT at 1210, 2273-2274; D. & O. at 41, 51, 74. A clinic secretary, Angela Hensley, similarly testified that after she was fired, Hooli offered her job back if she would write a letter stating that the doctors were not

---

[9] Divine wrote his letter on behalf of Drs. Chicos, Ilie, Ionescu, Khan, Qadir, Venkatesh, Speil, and Naseem. GX 33.

working the required hours in the office, which, she further testified, was not true. HT at 1290-1292; D. & O. at 44, 74.

Moreover, other evidence belies Kutty's reason for not paying the doctors. First, as the ALJ found, Kutty accused the doctors of not working the required 40 hours only after receiving Divine's letter. D. & O. at 74. Second, when Kutty ultimately fired the doctors, he retained Drs. Naseem and Venkatesh, whom he had characterized as the two worst offenders in not working the required hours. *Id.*; *Compare* GX 1 at 220-221 *with* HT 2760.

Therefore, we find that a preponderance of evidence demonstrates that Kutty's proffered reason for not paying the doctors, i.e. that they were not fulfilling the terms of their contract, was a pretext for not paying them.[10] The real reason for not paying them was Devine's letter. *See Schlagel v. Dow Corning Corp.*, ARB No 02-092, ALJ No. 01-CER-1, slip op. at 14 (ARB April 30, 2004)(employee may establish discrimination by proving employer's proffered reasons for adverse action were not the true reasons but a pretext for discrimination). *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-508 (1993). Consequently, we find that the Administrator proved that Kutty violated the Act when he stopped paying eight doctors after receiving Divine's letter.

After Kutty stopped paying any salary to the eight doctors, Divine filed a complaint on their behalf with the DOL on February 28, 2001. GX 28. On March 14, 2001, the Administrator began an investigation and interviewed the doctors. GX 29A-29P; HT at 67-68. Both the complaint and the doctors' interviews constitute protected activity. *See* 8 U.S.C.A. § 1182(n)(2)(C)(iv); 20 C.F.R. § 655.801; 20 C.F.R. § 655.806. On March 19, 2001, the Administrator faxed a letter to Kutty notifying him that an on-site investigation would commence at Kutty's Florida office on March 21, 2001. *See* GX 64, 82; 20 C.F.R. § 655.805. On March 21, 2001, an area representative for the Administrator began an on-site investigation of Kutty's records, and Divine also faxed a letter to Kutty demanding payment of salary amounts owed to two additional doctors. *See* GX 34. Later that same day, Kutty fired seven doctors.[11]

In his pre-hearing brief, Kutty suggested that he had no knowledge that Divine had instigated the investigation on behalf of the doctors, and thus he was not aware of protected conduct. As the ALJ noted, however, a patient of one of the doctors, Annette Fonte, testified that Hooli told her that the doctors had "turned [Kutty] in to the labor board." HT at 2033-2035. Thus, the ALJ inferred that Kutty had knowledge of the doctors' protected activity. D. & O. at 86. We find that Kutty was aware that the doctors had filed a DOL complaint and DOL had begun an investigation. And the record leads us

---

[10]    The ALJ reasonably construed a portion of Kutty's testimony to be an admission, thus direct evidence, that he stopped paying the doctors because of Divine's letter. *See* HT at 2754-2756; D. & O. at 85-86. We do not make this finding.

[11]    Kutty fired Drs. Chicos, Haque, Ilie, Ionescu, Khan, Qadir and Speil. GX 30.

to reasonably infer that Kutty knew that the doctors had initiated the complaint and investigation.

Kutty proffered two reasons for terminating the doctors' employment. First, that the clinics were having financial problems and therefore he could not pay the doctors. And second, Kutty asserts that when the Administrator's investigator, Sandra Kibler, arrived at his Florida office on March 21 to inspect records, he explained to her that the clinics were in financial trouble and the doctors were not performing as promised. Kutty testified that Kibler then informed him that he was required to either pay the H-1B nonimmigrant doctors their required wage, or, in light of what he had said about the financial problems and the doctors not working, he could terminate their employment. HT at 2759-2760. But Kibler testified that she told Kutty that while he could have previously terminated his H-1B employees if he felt that they were underperforming, it was too late to do so once the Administrator began to investigate because it would "look like retaliation." HT at 2065-2067, 2087; D. & O. at 64-65, 87. The ALJ credited Kibler's testimony that she did not recommend that Kutty fire the doctors, and Kutty has not demonstrated that Kibler's testimony is false. Thus, we find that Kibler did not tell Kutty to fire the doctors.

The Administrator proved by a preponderance of the evidence that Kutty discharged the doctors, at least in part, because of the DOL complaint and the investigation. When Kutty fired the doctors three weeks after they filed the DOL complaint, one week after the investigation into the complaint began, and on the same day that DOL investigators arrived at his Florida office to examine records, his decision to discharge the doctors must be deemed, in the ALJ's words, "inextricably linked to their having complained to Kutty and the DOL about the failure to pay them the salary required by the INA." D. & O. at 88.[12]

---

[12]     The ALJ concluded that Kutty could not prevail under a "dual motive" analysis. That is, Kutty did not show that, despite the DOL complaint and the subsequent investigation, he would have fired the doctors because of the clinics' financial woes. D. & O. at 88.   We agree with this conclusion because the record supports it. We note, however, that the ALJ apparently applied the "clear and convincing" standard of proof in her dual motive analysis. D. & O. at 84.  While we agree that even under the clear and convincing standard, Kutty could not prevail, we note that neither the Act nor the regulations specify the standard of proof to apply in gauging whether an INA employer may avoid liability under a dual motive analysis.  The preponderance standard applies to the environmental whistleblower protection statutes listed at Part 24 of 29 C.F.R.   *See Cox v. Lockheed Martin Energy Sys., Inc.,* ARB No. 99-040, ALJ No. 97-ERA-17, slip op. at 7 n. 7 (ARB Mar. 30, 2001). On the other hand, under the Energy Reorganization Act, also included in Part 24, the respondent employer's dual motive burden is by clear and convincing evidence. 42 U.S.C.A § 5851(b)(2)(D) (West 2000). Therefore, in the absence of any clear indication in the Act or regulations as to which standard applies, we hold that, under the INA, an employer must demonstrate by a preponderance of evidence that it would have taken the same unfavorable personnel action in the absence of protected activity.

## 4. Civil Money Penalties

The Act provides that the Administrator "may" assess civil money penalties up to $1000 for non-willful violations such as failure to pay wages and up to $5000 for willful violations or for discrimination. 8 U.S.C.A. § 1182(n)(2)(C)(i)-(ii); 20 C.F.R. § 655.810(b)(1)-(2)(i)-(iii). The Administrator assessed Kutty civil money penalties of $4000 per violation for willfully failing to pay required wages, $4000 per violation for discriminating against the doctors, and $800 per violation for failing to make available LCAs and other necessary documentation. GX 30. No penalties were imposed for Kutty's failure to maintain payroll records.

The ALJ found that Kutty admitted that he knew he was not going to pay the doctors the salaries listed on their LCAs. See e.g. GX 1 at 210-212 (regarding Dr. Khan's salary). Thus, she concluded, like the Administrator, that Kutty's failure to pay required wages was "willful," which is defined as "a knowing failure or a reckless disregard with respect to whether the conduct was contrary to" the INA. 20 C.F.R. § 655.805(c); D. & O. at 90-91. We find that the Administrator and the ALJ correctly concluded that Kutty's failure to pay wages was willful because the record supports such a conclusion.

The regulations specify seven factors that may be considered in determining the amount of the civil money penalties to be assessed: previous history of violations by the employer, the number of workers affected, the gravity of the violations, the employer's good faith efforts to comply, the employer explanation, the employer's commitment to future compliance, the employer's financial gain due to the violations or potential financial loss, injury or adverse effect to others. 20 C.F.R. § 655.810(c).

The ALJ considered these factors and concluded that the Administrator's assessment of civil money penalties was reasonable. Although Divine asserts that the Administrator's assessment of civil money penalties was conservative, the Administrator is vested with "enforcement discretion" "in fashioning remedies appropriate to the violation." 65 Fed. Reg. at 80180. See also 8 US.C.A. § 1182(n)(2)(C)(i)-(ii); 20 C.F.R. § 655.810(b)(1)-(2)(i)-(iii), (e)(2), (f). Consequently, as the Administrator is vested with discretion in calculating the amount of civil money penalties, and the record demonstrates that she did not abuse that discretion, we will not modify the Administrator's assessment or the ALJ's determination.

## 5. Personal Liability for Back Wages and Civil Money Penalties

The Administrator charged Kutty and the various corporate entities listed on the LCAs as employers.[13] Under the Act, the entity named as the employer on the LCA is

---

[13] The named corporate entities are: Sumeru Health Care Group; Sumeru Health Care Group, Inc. (incorporated in Florida, GX 5); Sumeru Health Care Group, Inc. (incorporated

liable. *See Administrator v. Native Techs., Inc.*, ARB No. 98-034, ALJ No. 96-LCA-2, slip op. at 7-8 (ARB May 28, 1999). But because all of Kutty's Tennessee clinics had closed, the Administrator "pierced the corporate veil" and held Kutty personally liable for the back wages and the civil money penalties. Kutty contends that he acted in good faith and, therefore, should not be personally liable.

The ALJ applied Tennessee common law in piercing the corporate veil and holding Kutty personally liable.[14] She discussed the factors that Tennessee courts consider relevant in determining whether to pierce the corporate veil. D. & O. at 99-101.[15] Then she found that "[m]ost of those factors are present in the case at hand." First, the Tennessee corporations were "undercapitalized" and Kutty supported them with funds from his Florida businesses and his own personal funds. Second, the record contained no evidence that Kutty issued stock certificates for the corporations. Kutty was the sole owner and had sole control over the corporate entities that submitted LCAs. Third, Kutty made all decisions regarding the corporations, and the administration of the corporate entities was shared in the same, centralized office. Fourth, she found that the assets of the corporations were interchangeable and their dealings were not at arm's length. D. & O. at 101.

Kutty contends that he should not be personally liable because he did not transfer assets from any of the corporate entities to avoid debts or pay himself any salary or commingle corporate funds with his personal funds, but actually transferred personal funds into the corporations to keep them viable. And the mere fact that a corporation has gone out of business is not sufficient grounds, Kutty argues, to pierce the corporate veil. Kutty Brief at 22-23.

---

in Tennessee, GX 2); Sumeru Health Care Group, Inc. (TN); Sumeru Health Care Group, L.C. (of Florida, GX 6) d/b/a Center for Internal Medicine and Pediatrics, Inc.; Sumeru Health Care Group, L.C. d/b/a Center for Internal Medicine and Pediatrics, P.C.; Center for Internal Medicine and Pediatrics, Inc. (incorporated in Tennessee, GX 3); Center for Internal Medicine and Pediatrics, P.C.; Maya Health Care, L.C., or other similar variations. *See* D. & O. at 94-99.

[14] *Carter-Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 746 n.1, 750 (6th Cir. 2001) (applied state common law to pierce corporate veil in claim arising under the liability provisions of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C.A. § 9601 *et seq.*(West 1995)). *See also United States v. Bestfoods*, 524 U.S. 51, 55, 63 n.9, 64 (1998) (leaving open the question whether state or federal common law applies to pierce corporate veil in case involving federal statute).

[15] The ALJ cited *Muroll Gesellschaft M.B.H. v. Tennessee Tape, Inc.*, 908 S.W.2d 211 (Tenn. Ct. App. 1995) and *VP Bldgs., Inc. v. Polygon Group, Inc.*, No. M2001-00613-COA-R3-CV, 2002 WL 1564 (Tenn. Ct. App. 2002). *See also Boles v. Nat'l Dev. Co., Inc.*, No. M2003-00971-COA-R3-CV, ___ S.W. 3d___, 2005 WL 975358, *14-16 (Tenn. Ct. App. Apr. 26, 2005) citing *VP Bldgs.*

17

Furthermore, Kutty argues that no authority exists under the INA's H-1B provisions or its implementing regulations for imposing personal liability.[16] Kutty also argues that imposing personal liability under the INA's H-1B provisions would frustrate the Act's purpose, which is to facilitate American global economic competitiveness while protecting American workers, and, in effect, would constitute rule-making without providing for notice and comment. Nor, Kutty notes, did he consent to be held personally liable as a consequence of being a voluntary and good faith participant in the H-1B program.

But under the circumstances herein, we reject Kutty's arguments. In light of the fact that the employing corporations are out of business and likely have no assets, a decision not to hold Kutty liable would be grossly unfair to the doctors because Kutty willfully violated the requirements of the Act. Furthermore, as the ALJ found, when Kutty terminated the doctors' employment because they engaged in protected activity, the clinics could not have continued to operate, thus any possibility that the Tennessee corporations might pay the back wages and the civil money penalties was foreclosed. Consequently, because Kutty's corporations had, in the ALJ's words, "no mind, will, or existence of their own" and his "domination" was used to perpetuate violations of the Act, we conclude that, in addition to the corporate respondents, Kutty is personally liable for the back wages and the civil money penalties. D. & O. at 101.

### 6. Debarment

The Act compels the Secretary to notify the Attorney General in the event she finds that an "employer" has willfully violated the Act or discriminated. The Attorney General then must debar the employer from employing H-1B nonimmigrants for two years. 8 U.S.C.A. § 1182(n)(2)(C)(ii).[17] The Act does not define "employer." But the implementing regulations define an "employer" as a "person, firm, corporation, contractor, or other association or organization in the United States which has an

---

[16]    In his response to the Board's Order granting Kutty's Motion for Reconsideration, Kutty references a February 3, 2004 ALJ D. & O., *Administrator, Wage & Hour Div., United States Dep't of Labor v. Abcom Consulting and Training, LLC*, 2004-LCA-0011 (ALJ Feb. 3, 2004), where the ALJ cites a letter from Abcom's attorney to her in which he states that the Office of the Solicitor, U. S. Department of Labor, representing the Administrator, interprets the INA as not allowing for personal liability. The ALJ further noted that the Administrator did not respond though she had the opportunity to do so. From this, Kutty argues that the Administrator acknowledges that the DOL interprets the INA as not allowing personal liability for violations of the INA. However, the Administrator notes in her response to the Board's Order Granting Reconsideration that her decision to not pierce the corporate veil in *Abcom* was one of "prosecutorial discretion" and that it does not reflect any change in her position that Kutty should be held personally liable.

[17]    The Administrator provided notification of the relevant INA violations to the DOL's ETA and the Attorney General in accordance with 8 U.S.C.A. § 1182(N)(2)(C)(ii)(1I) and 20 C.F.R. §§ 655.810(d)(2); 655.855(a). GX 30.

18

employment relationship with H-1B nonimmigrants and/or U.S. workers." 20 C.F.R. § 655.715. [18]

Kutty argued to the ALJ that though he signed the LCAs, he did so only as President and Medical Director of the corporation and not in an individual capacity. The ALJ agreed with the Administrator, however, that Kutty was an employer because he met the definition of "employer."

In our environmental whistleblower jurisprudence, which, as we noted, applies to discrimination claims under the INA, we held that the crucial factor in determining whether an employment relationship exists is whether the respondent acted in the capacity of an employer, that is, exercised control over, or interfered with, the terms, conditions, or privileges of the complainant's employment. The ability to hire, transfer, promote, reprimand, or discharge the complainant, or to influence another employer to take such actions against a complainant, is evidence of the requisite degree of control. *Seetharam v. General Elec. Co.*, ARB No. 03-029, ALJ No. 2002-CAA-21, slip op. at 5 (ARB May 28, 2004); *Lewis v. Synagro Techs., Inc.*, ARB No. 02-072, ALJ Nos. 02-CAA-12, 14, slip op. at 8 n. 14, 9-10 (ARB Feb. 27, 2004).

The record demonstrates that Kutty hired, reprimanded, and discharged the doctors. Thus, he exercised control over and interfered with the doctors' employment. Therefore, we conclude that an "employment relationship" existed between Kutty and the doctors and that he was their employer. Consequently, the Attorney General should debar Kutty for two years.

## CONCLUSION

The Administrator proved that Kutty and the corporations violated the Act when they did not pay the 17 doctors the required wages. She also properly concluded that Kutty and the corporations must reimburse those doctors who paid J1 waiver and H-1B visa costs and expenses. Furthermore, the Administrator met her burden of proof that Kutty and the corporations violated the Act when they discriminated against nine doctors. Moreover, the Administrator's assessment of civil money penalties is reasonable. Therefore, we **AFFIRM** the ALJ's Order dated October 9, 2002. Additionally, the circumstances herein compel us to conclude that Kutty is personally liable for the back

---

[18] Under the previous implementing regulation, to be considered an "employer," the "person" or "corporation" had to have an Internal Revenue Service tax identification number. *See* 20 C.F.R. § 655.715 (1995). The current amended version of the regulation, which became effective on December 20, 2000, does not contain this requirement. *See* 65 Fed. Reg. 80211 (2000). Nevertheless, in his response to the Board's Order granting Dr. Kutty's Motion for Reconsideration, Kutty contends that the IRS tax number requirement was still in effect until November, 23, 2004, and therefore, since no proof was adduced that he had a tax number, he cannot be an "employer." Contrary to Kutty's contention, although Section 655.715 was again amended in part, effective November, 23, 2004, the IRS Service tax identification number requirement had already been removed. *See* 69 Fed. Reg. 68228 (2004).

wages, the reimbursements, and the civil money penalties. Finally, we conclude that the Attorney General should debar Kutty for two years.

**SO ORDERED.**

**OLIVER M. TRANSUE**
**Administrative Appeals Judge**

**WAYNE C. BEYER**
**Administrative Appeals Judge**

## ADMINISTRATIVE REVIEW BOARD
## CERTIFICATE OF SERVICE

**CASE NAME** : *DOL v. Mohan Kutty, M.D. d/b/a The Center for Internal Medicine and Pediatrics, Inc., et al.*

**ARB CASE NO:**  03-022

**ALJ CASE NO. :**  2001-LCA-10 through 01-LCA-25

**DOCUMENT**  Final Decision and Order

A copy of the above-referenced document was sent to the following persons on

**MAY 3 1 2005** .

*M. Cynthia Douglas*

### CERTIFIED MAIL:

Angelo A. Paparelli
Paparelli & Partners LLP
4 Park Plaza, Suite 200
Irvine, CA 92614

Dr. Viorel Manole
2416 East Stone Drive
#400E
Kingsport, TN 37660

Robert Divine, Esq.
Alison Tuley Shaw, Esq.
Baker, Donelson, Bearman & Caldwell
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450

Dr. Nazneen Ahmed
142 Mount Pelia
P.O. Box 964
Martin, TN 38237

Dr. Ferdinand Casis
827 Blue Top Road
Apt. #2
Tazewell, TN 37879

Dr. Vlad Radulescu
149 Todd Street
Harrogate, TN 37752

Dr. Srinivasa Chintalapudi
4503 Washington Pike
Knoxville, TN 37917

Dr. Dragos Munteanu
1715 Evening Shade Lane
Knoxville, TN 37919

Dr. Sivalingam Kanagasegar
719 Lester Green Lane
Apartment D
Tazewell, TN 37879

## REGULAR MAIL

Steven J. Mandel, Esq.
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N2716
Washington, DC 20210

Howard Radzely
Office of the Solicitor
U.S. Department of Labor
200 Constitution Ave., NW
Room S-2002
Washington, DC 20210

Donna E. Sonner, Esq.
Office of the Associate Regional Solicitor
U.S. Department of Labor/SOL
2002 Richard Jones Road
Suite B-201
Nashville, TN 37215

Alfred Robinson
Acting Administrator
Wage and Hour Division
U.S. Department of Labor/ESA
200 Constitution Avenue, N.W.
Room S-3502
Washington, DC 20210

Sandra R. Sanders
Assistant District Director
Wage and Hour Division
U.S. Department of Labor/ESA
710 Locust Street, Room 101
Knoxville, TN 37902

Hon. John M. Vittone
Chief Administrative Law Judge
Office of Administrative Law Judges
800 K Street, N.W., Suite 400
Washington, DC 20001-8002

Hon. Alice M. Craft
Administrative Law Judge
Office of Administrative Law Judges
800 K Street, N.W., Suite 400
Washington, DC 20001-8002



6/0-310

U.S. COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

In the Matter of:                              )
                                               )
Mohan KUTTY, M.D.,                             )     Case No. 05-1227
                                               )
              Petitioner                       )
       v.                                      )
                                               )
United States Department of Labor,             )
Wage & Hour Division, Employment               )
Standards Administration                       )
                                               )
              Respondent.                      )

FOR DISTRICT OF COLUMBIA CIRCUIT OF APPEALS
FILED

AUG 1 2 2005

CLERK

## Certificate as to Parties, Rulings, and Related Cases

1. <u>Parties and Amici</u>: The parties appearing in this court are Mohan Kutty, M.D., Petitioner
   and the U.S. Department of Labor, Wage and Hour Division, Employment Standards
   Administration, Respondent;

2. <u>Rulings Under Review</u>: The ruling under review in this case is the Final Decision and
   Order of the U.S. Department of Labor Administrative Review Board, dated
   May 31, 2005; and

3. <u>Related Cases</u>: A related case concerning the same underlying agency order is pending in
   the U.S. Courts of Appeals for the 6th Circuit, Mohan Kutty, M.D. v. U.S. Department of
   Labor, Docket 05-3863.

                                        Respectfully submitted,

                                        On behalf of Respondent,

                                        ANGELO A. PAPARELLI,
                                        Michigan State Bar # 98446
                                        California State Bar # P26892

UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

## CERTIFICATE OF SERVICE

Case Name:  Mohan Kutty, M.D.,

Petitioner

v.

United States Department of Labor,

Respondent.

Case No.:  05-1227

Documents:  Certificate of Counsel

Copies of the above-referenced documents were sent to the following persons on 3/11/2005.

Debi Gloria

Dr. Viorel Manole
2416 East Stone Drive
#400E
Kingsport, TN 37660

Robert Divine, Esq.
Alison Tuley Shaw, Esq.
Baker, Donelson, Bearman & Caldwell
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450

Dr. Nazneen Ahmed
142 Mount Pelia
P.O. Box 964
Martin, TN 38237

Dr. Ferdinand Casis
827 Blue Top Road
Apt. #2
Tazewell, TN 37879

Dr. Vlad Radulescu
149 Todd Street
Harrogate, TN 37752

Dr. Srinivasa Chintalapudi
4503 Washington Pike
Knowxville, TN 37917

Dr. Dragos Munteanu
1715 Evening Shade Lane
Knoxville, TN 37919

Dr. Sivalingam Kanagasegar
719 Lester Green Lane
Apartment D
Tazewell, TN 37879

Steven J. Mandel, Esq.
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N2716
Washington, DC 20210

Howard Radzely
Officer of the Solicitor
U.S. Departmetn of Labor
200 Constitution Ave., NW
Room S-2002
Washington, DC 20210

Donna E. Sonner, Esq.
Office of the Associate Regional Solicitor
U.S. Department of Labor/SOL
2002 Richard Jones Road
Suite B-201
Nashville, TN 37215

Alfred Robinson
Acting Administrator
Wage and Hour Division
U.S. Department of Labor/ESA
200 Constitution Avenue, NW
Room S-3502
Washington, DC 20210

Sandra R. Sanders
Assistant District Director
Wage and Hour Division
U.S. Department of Labor/ESA
710 Locust Street, Room 101
Knoxville, TN 37902

Hon. Jon M. Vittone
Chief Administrative LawJudge
Office of Administrative Law Judges
800 K Street, NW, Suite 400
Washington, DC 20001-8002

Hon. Alice M. Craft
Administrative Law Judge
Office of Administrative Law Judges
800 K Street, N.W., Suite 400
Washington, DC 20001-8002

**PAPARELLI**
& PARTNERS CORPORATION

FOR DISTRICT OF COLUMBIA CIRCUIT
UNITED STATES COURT OF APPEALS

AUG 1 2 2005

RECEIVED

*LAWYERS* ▲ *SERVING THE IMMIGRATION NEEDS*
*OF GLOBAL BUSINESSES AND FAMILIES*

ANGELO A. PAPARELLI
YOSHIKO I. ROBERTSON
SUSAN K. WEHRER

4 PARK PLAZA ▲ SUITE 200
IRVINE, CA 92614-8533
TELEPHONE 949/955-5555
FACSIMILE 949/955-5599
WWW.ENTERTHEUSA.COM

August 11, 2005

THIS SUBMISSION CONTAINS CONFIDENTIAL
COMMERCIAL INFORMATION PER FOIA [5 USC 552(b)(4)].
SUBMITTER REQUESTS PREDISCLOSURE NOTIFICATION
PER 06/23/87 PRESIDENTIAL EXECUTIVE ORDER.

## BY FEDERAL EXPRESS

Shana Thurman
Court Clerk
United States Court of Appeals
District of Columbia Circuit
333 Constitution Avenue, N.W., Room 5423
Washington, D.C. 20001

> Re: Mohan Kutty, M.D.
> v.
> U.S. Department of Labor, Wage & Hour Division,
> Employment Standards Administration
>
> Case No. 05-1227
>
> Certificate of Counsel _____

Dear Ms. Thurman:

We are attorneys for Dr. Mohan Kutty and we filed a Petition for Review on his behalf on June 30, 2005. Per the July 13, 2005 Order, we are submitting the following documents that were not included with our filing on July 27, 2005, with proof of service:

- Certificate of Counsel.

If you require any further information or documentation in connection with this matter, please contact me at (949) 955-5555. Thank you for your attention to this matter.

Very truly yours,

Angelo A. Paparelli

Enclosures
AAP/dg
40700-000002

Case 3:05-cv-00510   Document 1-2   Filed 11/07/05   Page 76 of 95   PageID #: <pageID>



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

AUG 1 8 2005

RECEIVED
In the Matter of:

U.S. COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

Mohan KUTTY, M.D.,                    )

                    Petitioner       )

v.                                    )

United States Department of Labor,    )

                    Respondent.       )

Case No. 05-1227

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

AUG 1 8 2005

CLERK

## PETITIONER'S MOTION TO TRANSFER TO U.S. DISTRICT COURT

## AND RESPONSE TO MOTION TO DISMISS

1.     Petitioner, Mohan Kutty, M.D. ("Dr. Kutty" or "Petitioner"), by and through his

attorneys, Angelo A. Paparelli and Yoshiko Robertson of Paparelli & Partners LLP, files

this Response to the Motion of the U.S. Department of Labor ("DOL" or "Respondent")

to Dismiss. Dr. Kutty further files this Motion to Transfer to the U.S. District Court of

the District of Columbia Circuit ("District Court"), in response. On August 5, 2005, the

DOL served Petitioner by mail with a Motion to Dismiss the June 30, 2005 Petition for

Review. As provided in D.C. Circuit Rules 26 and 27, Petitioner's Motion to Transfer is

timely.

2.     On June 30, 2005, Petitioner filed a Petition for Review, incorporated herein by

reference, of the May 31, 2005, Final Decision and Order of the DOL's Administrative

Review Board ("ARB"). The Petition for Review was timely filed with the U.S. Court

of Appeals for the District of Columbia ("Court").

3.     In the Motion to Dismiss, the DOL requests dismissal of the Petition for Review

for lack of jurisdiction. The DOL argues that there is no statute conferring jurisdiction on

the Court to review the ARB's decision in this case.

4. Petitioner asserts that the Motion to Dismiss should not be granted and that instead this case should be transferred to District Court pursuant to 28 U.S.C. § 1631. The transfer statute, 28 U.S.C § 1631, provides that "[w]henever a civil action is filed in court…including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed."

5. Justice and the circumstances of this case require transfer, the records does not show that transfer would unduly burden the justice system, and the DOL cannot show that it will be harmed by the transfer. This case should not be dismissed because it requires judicial review by a federal circuit. This case presents novel questions of first impression: it is the first case to impose personally liability on a non-consenting individual for the voluntary obligations undertaken by corporate entities in requesting and obtaining immigration benefits under any nonimmigrant visa category. If this case is not addressed by the federal circuit, Dr. Kutty will suffer undue hardship, including $1.2 million in fines and penalties and debarment from employing nonimmigrant aliens for two years. This case is meritorious and otherwise timely and, thus, will not waste the District Court's time. Furthermore, the DOL will not be prejudiced by the transfer because it has not yet responded to the merits of the Petition for Review. Thus, Petitioner requests transfer of this case and, in order to preserve that the Petition for Review was timely filed, Petitioner requests that, pursuant to 28 U.S.C. § 1631, this case proceed in District Court as if it had been filed on the date upon which it was actually filed in this

Court.

6.     Petitioner further maintains that the District Court has jurisdiction to review the ARB's May 31, 2005 final agency decision pursuant to 28 U.S.C. § 1331 and the Administrative Procedures Act ("APA"), 5 U.S.C. § 501 et. seq.. Petitioner has standing under Article III of the U.S. Constitution to seek review and reversal of the final agency decision. Venue in the District Court of the D.C. Circuit is proper pursuant to 28 U.S.C. § 1391(e).

## BACKGROUND

7.     On May 31, 2005, the ARB affirmed the October 9, 2002 Decision of the DOL Administrative Law Judge ("ALJ"), in which the ALJ found that Dr. Kutty had failed to comply with Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C.A. §§1101(a)(15)(H)(i)(b), 1182(n), and 1184(c), and its implementing regulations, 20 C.F.R. §§ 655, subparts H and I, by willfully failing to pay the alien doctors employed by the Center for Internal Medicine and Pediatrics, Inc., et. al ("medical clinics") and for discriminating against nine doctors for engaging in protected activity. The ARB upheld the ALJ's Decision, ordering Dr. Kutty and the medical clinics to pay back wages to the doctors, reimburse the doctors for the filing fees and attorney fees associated with obtaining J-1 waivers and H-1B visas, and pay civil money penalties to the DOL. The ARB further pierced the corporate veil and, thereby, found Dr. Kutty personally liable for the Labor Condition Application ("LCA") obligations of the medical clinics who had participated in the voluntary H-1B program. Consequently, the ARB ordered Dr. Kutty personally liable for over $1.2 million in back wages, reimbursements, and civil money penalties and is debarring him from employing nonimmigrant aliens for two years.

8. Petitioner seeks reversal of the Administrative Review Board's May 31, 2005 Final Decision and Order, including the underlying October 9, 2002 Order of the Administrative Law Judge. Specifically, Dr. Kutty seeks an Order absolving him of personal liability for back wages and reimbursements to the alien doctors and civil money penalties to the DOL. Petitioner further seeks a removal of the two-year debarment from employing nonimmigrant aliens. Petitioner further seeks attorney fees and costs associated with litigation from the U.S. Department of Labor pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 et seq..

9. As previously stated in Petitioner's July 26, 2005 Statement of Issues, incorporated herein by reference, Petitioner challenges the legal and factual determinations of the ARB and seeks review of the following issues addressed by the ARB:

> a. Do the actions of the DOL and the U.S. Citizenship and Immigration Services ("USCIS") in approving the LCA's and the H-1B petitions mitigate Petitioner's liability and are the DOL and USCIS liable to the alien doctors for civil money penalties?
>
> b. Are the alien doctors entitled to reimbursements for the filing fees and attorney fees associated with obtaining J-1 waivers and H-1B visas, and, if so, did the ALJ properly calculate those amounts?
>
> c. Did Petitioner discriminate against nine doctors for engaging in protected activity?
>
> d. Did the administrative tribunals below lack authority under the INA and its implementing regulations and the facts of record to pierce the

corporate veil and, thereby, hold Petitioner personally liable for the back wages and civil money penalties?

e. Should Petitioner be debarred from employing nonimmigrant aliens for two years?

## TRANSFER TO U.S. DISTRICT COURT

10. Transfer to the District Court is warranted. Justice and the circumstances of this case require transfer, the record does not show that transfer would unduly burden the justice system, and the DOL cannot show that it will be harmed by the transfer.

11. 28 U.S.C. § 1631 requires a court to consider transfer as an alternative to dismissal for want of jurisdiction. The Court has previously recognized the requirement to consider transfer to District Court in order to cure jurisdictional defects. In *Wellife Products v. Shalala*, 52 F.3d 354 (D.C. Cir. 1995), the Court transferred a First Amendment challenge to a Food and Drug Administration to District Court pursuant to 28 U.S.C. § 1631 where the appropriate regulatory scheme did not provide for a single, uniform procedure for judicial review. As in *Wellife Products*, the INA and its implementing regulations do not provide for a single, uniform procedure for judicial review of ARB decisions addressing LCA obligations. In *Workplace Health & Safety Council v. Reich*, 56 F.3d 1465 (D.C. Circuit 1995), the Court transferred a pre-enforcement challenge to an Occupational Safety and Health Act regulation to District Court pursuant to 28 U.S.C. § 1631, finding that the District Court, as in Petitioner's case, has jurisdiction pursuant to the APA, 5 U.S.C. § 703.

12. Justice and the circumstances of this case require transfer to District Court instead

of dismissal. This case presents novel questions of first impression. The ARB's May 31, 2005 decision is the first final agency action in the history of the INA – a statute enacted originally in 1952 and amended frequently over the last five decades – to impose personally liability on a non-consenting individual for the voluntary obligations undertaken by corporate entities in requesting and obtaining immigration benefits under any nonimmigrant visa category. By piercing the corporate veil and imposing over $1.2 million in fines and penalties against Dr. Kutty personally for the LCA obligations of the medical clinics, the ARB deviated from the general rule that limits liability for corporate offenses to the responsible corporate entities. Despite the INA's long history, the U.S. government has never interpreted or sought to enforce the INA in this manner, and until the ARB's final action in this case, no agency or court has imposed personal liability by piercing the corporate veil for an H-1B visa or any other nonimmigrant visa violation.

13.     Dismissal will result in undue hardship to Dr. Kutty. The filing of the Petition for Review is not frivolous because Dr. Kutty has been grossly and unfairly aggrieved by the ARB's decision. As a result of the ARB's decision, Dr. Kutty is being held personally liable for over $1.2 million in back wages, reimbursements, and civil money penalties and will be debarred from employing nonimmigrant aliens for two years.

14.     Absent transfer, applicable statutes of limitations may bar Dr. Kutty from adjudicating his otherwise legitimate claims. "A compelling reason for transfer is that the [petitioner], whose case if transferred is for statute of limitations purposes deemed by section 1631 to have been filed in the transferor court...will be time-barred if his case is dismissed and thus has to be filed anew in the right court." *Phillips v. Seiter*, 173 F. 3d 609, 610 (7th Cir. 1995)(citations omitted). Moreover, the June 30, 2005 Petition for

Review was timely filed and Petitioner seeks to preserve the timeliness of his filing through transfer to the District Court.

15.     The record does not show that transfer would unduly burden the justice system. As in *Wellife,* when the regulatory scheme – in this case, the INA and its implementing regulations – does not provide a clear scheme for judicial review, the aggrieved party should not be penalized for jurisdictional defects where the case is non-frivolous and would be considered timely filed if it had been filed in the proper court. "A court is authorized to consider the consequences of transfer before deciding whether to transfer." 173 F. 3d at 610. As discussed in the Statement of Issues, the ARB's decision was based upon clearly erroneous factual and legal determinations which meet the standard for appellate review. Moreover, Dr. Kutty timely filed the Petition for Review. Thus, this case would not be dismissed if transferred to District Court.

16.     Transfer will not prejudice the DOL. The DOL has not yet responded to the merits of the Petition for Review and has asked the Court for a deferment of the filing of a "certified index to record." As the DOL has yet to invest in litigating this case at the federal court level, the DOL will not be harmed by the transfer to District Court.

## JURISDICTION AND VENUE IN U.S. DISTRICT COURT

17.     Petitioner has standing under Article III of the U.S. Constitution to appeal the ARB's decision. First, Petitioner satisfies the "case" or "controversy" test of Article III of the Constitution, as he alleges that the DOL's decision causes him injury in fact. Second, the ARB's May 31, 2005 decision is ripe for judicial review by the District Court and the District Court has subject matter jurisdiction to review the decision under 28

U.S.C. § 1331 and the APA, 5 U.S.C. §§ 702-704. Third, Congress did not preclude judicial review of the ARB's rulings as to LCA obligations of the H-1B program.

18.    Petitioner satisfies the "case" or "controversy" test of Article III of the Constitution, as he alleges that the DOL's decision causes him injury in fact. In order for a petitioner to have standing before a court, the petitioner must demonstrate that the challenged action has caused him injury in fact, economic or otherwise. *See Data Processing Service v. Camp,* 397 U.S. 150, 152 (1970). As a result of the ARB's decision, Dr. Kutty is being held personally liable for over $1.2 million in fines and penalties and will be debarred from employing nonimmigrant aliens for two years.

19.    The ARB's May 31, 2005 decision is ripe for judicial review by the District Court as it is the first action by the DOL to impose personally liability on a non-consenting individual for the voluntary obligations undertaken by corporate entities in requesting and obtaining immigration benefits under any nonimmigrant visa category. By piercing the corporate veil, the ARB deviated from Congressional intent in enacting the INA and from the general rule that limits personal liability for corporate offenses. Nowhere in the INA or its implementing regulations is authority conferred for piercing the corporate veil and thereby holding the officer of a corporation personally liable for corporate violations of the LCA process.

20.    The District Court has subject matter jurisdiction to review the ARB's decision. Under 28 U.S.C. § 1331, the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. *See McNary v. Hat. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494 (1991) (where statute contains no provision explicitly barring federal court review, "the District Court's general federal-

question jurisdiction under 28 U.S.C. § 1331 to hear th[e] action remains unimpaired").

21.     The District Court has jurisdiction to review the ARB's final agency decision under the APA, 5 U.S.C. §§ 702-704. The ARB is an agency subject to judicial review under the APA. The APA defines an "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review." 5 U.S.C. § 701. As a subdivision of the DOL, the ARB is an agency as defined by the APA. As the language of the INA and its implementing regulations do not implicitly or explicitly remove the ARB from the purview of the APA, the ARB's actions remain subject to the provisions of the APA.

22.     The District Court has jurisdiction to review the ARB's decision because it is a final agency action subject to judicial review under the APA, 5 U.S.C. §§ 702-704. The APA provides for judicial review of a final agency action for which there is no other adequate remedy in a court. 5 U.S.C. § 704. Where an agency has taken a "final" action, the APA provides a cause of action to challenge agency decisions. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882 (1990). In the instant case, Dr. Kutty has exhausted the administrative process and the ARB's May 31, 2005 decision is the final decision in the administrative process.

23.     Congress did not preclude judicial review of the ARB's rulings as to LCA obligations of the H-1B program. An agency's final action is not subject to the judicial review provisions of the APA if a statute precludes judicial review of the action or the action is committed to agency discretion by law. 5 U.S.C. § 701. Neither the INA nor any other statute or implementing regulations prohibit judicial review of the ARB's final decisions addressing LCA obligations. Moreover, no statute or regulation specifically

limits the ARB's final decisions addressing LCA violations to agency discretion.

24.    28 U.S.C. § 1391(e) provides that "[a] civil action in which a defendant is...an agency of the United States......may, except as otherwise provided by law, be brought in any judicial district in which...a substantial part of the events or omissions giving rise to the claim occurred." As the litigation in this case and the ARB's final agency action occurred in the D.C. Circuit and, as the D.C. Circuit has the historical expertise in reviewing agency decisions, the D.C. Circuit is the proper venue.

25.    Dr. Kutty may therefore challenge the ARB's final decision under 28 U.S.C. § 1331 and the APA, 5 U.S.C. § 501 et. seq.. As the ARB has made clearly erroneous factual and legal determinations which meet the standard for appellate review, this case requires consideration by the District Court.

Respectfully submitted,

On behalf of Respondent,

ANGELO A. PAPARELLI,
Michigan State Bar # 98446
California State Bar # P26892

## UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

### CERTIFICATE OF SERVICE

Case Name:       Mohan Kutty, M.D.,

                 Petitioner

                 v.

                 United States Department of Labor,

                 Respondent.

Case No.:        05-1227

Documents:       Petitioner's Motion to Transfer to U.S. District Court and Response to
                 Motion to Dismiss

Copies of the above-referenced documents were sent to the following persons on $8-17-05$.

Dr. Viorel Manole
2416 East Stone Drive
#400E
Kingsport, TN 37660

Robert Divine, Esq.
Alison Tuley Shaw, Esq.
Baker, Donelson, Bearman & Caldwell
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450

Dr. Nazneen Ahmed
142 Mount Pelia
P.O. Box 964
Martin, TN 38237

Dr. Ferdinand Casis
827 Blue Top Road
Apt. #2
Tazewell, TN 37879

Dr. Vlad Radulescu
149 Todd Street
Harrogate, TN 37752

Dr. Srinivasa Chintalapudi

4503 Washington Pike
Knowxville, TN 37917

Dr. Dragos Munteanu
1715 Evening Shade Lane
Knoxville, TN 37919

Dr. Sivalingam Kanagasegar
719 Lester Green Lane
Apartment D
Tazewell, TN 37879

Steven J. Mandel, Esq.
Associate Solicitor
Division of Fair Labor Standards
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N2716
Washington, DC 20210

Howard Radzely
Officer of the Solicitor
U.S. Departmetn of Labor
200 Constitution Ave., NW
Room S-2002
Washington, DC 20210

Donna E. Sonner, Esq.
Office of the Associate Regional Solicitor
U.S. Department of Labor/SOL
618 Church Street, Suite 230
Nashville, TN 37219-2456

Alfred Robinson
Acting Administrator
Wage and Hour Division
U.S. Department of Labor/ESA
200 Constitution Avenue, NW
Room S-3502
Washington, DC 20210

Sandra R. Sanders
Assistant District Director
Wage and Hour Division
U.S. Department of Labor/ESA
710 Locust Street, Room 101
Knoxville, TN 37902

Hon. Jon M. Vittone
Chief Administrative LawJudge
Office of Administrative Law Judges

800 K Street, NW, Suite 400
Washington, DC 20001-8002

Hon. Alice M. Craft
Administrative Law Judge
Office of Administrative Law Judges
800 K Street, N.W., Suite 400
Washington, DC 20001-8002


**PAPARELLI**
**& PARTNERS LLP**

LAWYERS ▲ SERVING THE IMMIGRATION NEEDS
OF GLOBAL BUSINESSES AND FAMILIES

ANGELO A. PAPARELLI
YOSHIKO I. ROBERTSON
SUSAN K. WEHRER

August 17, 2005

4 PARK PLAZA ▲ SUITE 200
IRVINE, CA 92614-8533
TELEPHONE 949/955-5555
FACSIMILE 949/955-5599
WWW.ENTERTHEUSA.COM

THIS SUBMISSION CONTAINS CONFIDENTIAL COMMERCIAL
INFORMATION PER FOIA [5 USC 552(b)(4)]. SUBMITTER
REQUESTS PREDISCLOSURE NOTIFICATION PER 06/23/87
PRESIDENTIAL EXECUTIVE ORDER.

## BY FEDERAL EXPRESS

Shana Thurman
Court Clerk
United States Court of Appeals
District of Columbia Circuit
333 Constitution Avenue, N.W., Room 5423
Washington, D.C. 20001

> UNITED STATES COURT OF APPEALS
> FOR DISTRICT OF COLUMBIA CIRCUIT
>
> AUG 1 8 2005
>
> RECEIVED

Re:    Mohan Kutty, M.D.
       v.
       U.S. Department of Labor, Wage & Hour Division,
       Employment Standards Administration

Case No. 05-1227

Motion to Transfer to U.S. District Court & Response to Motion to Dismiss

Dear Ms. Thurman:

We are attorneys for Dr. Mohan Kutty and we filed a Petition for Review on his behalf on June 30, 2005. We are submitting the following documents in response to the Respondent's Motion to Dismiss Petition for Review, with proof of service:

- Petitioner's Motion to Transfer to U.S. District Court and Response to Motion to Dismiss.

If you require any further information or documentation in connection with this matter, please contact Angelo A. Paparelli at (949) 955-5555. Thank you for your attention to this matter.

Very truly yours,

Liane M. Jarvis

Enclosures
LMJ
40700-000002

Case 3:05-cv-00510   Document 1-2   Filed 11/07/05   Page 91 of 95   PageID #: <pageID>



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

AUG 1 8 2005

RECEIVED

Case Name:

UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

CERTIFICATE OF SERVICE

Mohan Kutty, M.D.,

Petitioner

v.

United States Department of Labor,

Respondent.

Case No.:        05-1227

Documents:       Petitioner's Motion to Transfer to U.S. District Court and Response to
                 Motion to Dismiss

Copies of the above-referenced documents were sent to the following persons on 8-18-05.

Liane M. Jarvis

Kenneth L. Wainstein
United States Attorney
R. Craig Lawrence
Assistant United States Attorney
Judiciary Center Building
555 4th Street N.W.
Washington, D.C. 20530



# PAPARELLI & PARTNERS LLP

ANGELO A. PAPARELLI
~~UNITED STATES COURT OF APPEALS~~ ROBERTSON
FOR DISTRICT OF COLUMBIA CIRCUIT ~~SUSAN K.~~ WEHRER

August 18, 2005

4 PARK PLAZA ▲ SUITE 200
IRVINE, CA 92614-8533
TELEPHONE 949/955-5555
FACSIMILE 949/955-5599
WWW.ENTERTHEUSA.COM

AUG 1 9 2005

BY FEDERAL EXPRESS **RECEIVED**

THIS SUBMISSION CONTAINS CONFIDENTIAL COMMERCIAL
INFORMATION PER FOIA [5 USC 552(b)(4)]. SUBMITTER
REQUESTS PREDISCLOSURE NOTIFICATION PER 06/23/87
PRESIDENTIAL EXECUTIVE ORDER.

Shana ~~Thurman~~
Court Clerk
United States Court of Appeals
District of Columbia Circuit
333 Constitution Avenue, N.W., Room 5423
Washington, D.C. 20001

Re: Mohan Kutty, M.D.
v.
U.S. Department of Labor, Wage & Hour Division,
Employment Standards Administration

Case No. 05-1227

Motion to Transfer to U.S. District Court

Dear Ms. Thurman:

We are attorneys for Dr. Mohan Kutty and we filed a Petition for Review on his behalf on June 30, 2005. On August 17, 2005, we submitted the original and three copies of the Petitioner's Motion to Transfer to U.S. District Court and Response to Motion to Dismiss, with proof of service. We are providing the Court with the following:

- A fourth copy of the Motion to Transfer; and,
- Additional proof of service of the Motion to Transfer on the United States Attorney's Office.

If you require any further information or documentation in connection with this matter, please contact Angelo A. Paparelli at (949) 955-5555. Thank you for your attention to this matter.

Very truly yours,

Liane M. Jarvis

Enclosures
LMJ
40700-000002





UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 05-1227

MOHAN KUTTY,

v.

UNTIED STATES DEPARTMENT OF LABOR,                    Respondent.

## PARTIES' STIPULATION REGARDING TRANSFER

Petitioner Mohan Kutty and Respondent Department of Labor stipulate that this

action should be transferred to the United States District Court for the Eastern District

of Tennessee as follows:

1. The parties agree that this action should be transferred to the Eastern District

of Tennessee, Knoxville, Division.

2. The parties agree that respondent Department of Labor shall have the sixty

days prescribed by Rule 12 (a)(3)(A), Federal Rules of Civil Procedure, after the case is

docketed by the Clerk's Office in Knoxville Division of the Eastern District of

Tennessee, to respond to the Petition for Review.

3. The parties agree that as soon as this petition is transferred to the Eastern

District of Tennessee, petitioner will dismiss its petition presently pending in the Sixth

Circuit Court of Appeals.

_Gelo Paparelli._  9/27/05

ANGELO PAPARELLI,
4 PARK PLAZA
SUITE 200
IRVINE, CA 92614-8533
Counsel for Petitioner

_Kenneth L. Wainstein_ MR

KENNETH L. WAINSTEIN
United States Attorney

_R. Craig Lawrence_ ak

R. CRAIG LAWRENCE
Assistant United States Attorney
Judiciary Center Building
555 4th Street N.W.
Washington, D.C. 20530
(202) 514-7151
Counsel for Respondent

_Michael G Ryan_
_Assistant United States Attorney_

- 2 -